No. 22-1093

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

PROMPTU SYSTEMS CORPORATION,

*Appellant*,

v.

COMCAST CABLE COMMUNICATIONS, LLC,

*Appellee*.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, Case No. IPR2018-00344

# RESPONSE BRIEF FOR APPELLEE
# COMCAST CABLE COMMUNICATIONS, LLC

James L. Day
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, Suite 3301
New York, New York 10153
(212) 310-8000

Mark A. Perry
 *Principal Attorney*
Joshua Halpern
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com

*Counsel for Appellee Comcast Cable Communications, LLC*

# REPRESENTATIVE CLAIM

## U.S. Patent No. 7,047,196 (Claim No. 1)

1. A method of using a back channel containing a multiplicity of identified speech channels from a multiplicity of user sites presented to a speech processing system at a wireline node in a network supporting at least one of cable television delivery and video delivery, comprising the steps of:

> receiving said back channel to create a received back channel;

> partitioning said received back channel into a multiplicity of received identified speech channels;

> processing said multiplicity of said received identified speech channels to create a multiplicity of identified speech content; and

> responding to said identified speech content to create an identified speech content response that is unique, for each of said multiplicity of identified speech contents.

# CERTIFICATE OF INTEREST

Counsel for Appellee Comcast Cable Communications, LLC certifies the following:

1. The full name of every entity represented by me is:

   Comcast Cable Communications, LLC

2. The parties named in the caption are the real parties in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of Appellee are as follows:

   Comcast Corporation

4. The names of all law firms and the partners or associates that appeared for Appellee in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   KEKER VAN NEST & PETERS LLP: Leo Lam, David Silbert, Ajay Krishnan

5. The following pending case may affect or be affected by this appeal:

   *Promptu Systems Corporation v. Comcast Corporation and Comcast Cable Communications, LLC*, No. 2:16-cv-06516 (E.D. Pa.)

6. There are no organizational victims or bankruptcy case debtors or trustees in this appeal.


Dated: June 10, 2022                    */s/ Mark A. Perry*
                                        Mark A. Perry
                                        WEIL, GOTSHAL & MANGES LLP
                                        2001 M Street NW, Suite 600
                                        Washington, D.C. 20036
                                        (202) 682-7000
                                        Mark.Perry@weil.com

INTRODUCTION ................................................................................................1

STATEMENT OF THE ISSUES.........................................................................3

STATEMENT OF THE CASE.............................................................................3

    I.    Background.............................................................................................4

        A.    Promptu's AgileTV System...............................................................4

        B.    The '196 Patent .................................................................................4

    II.    The Prior Art.........................................................................................8

        A.    Julia ..................................................................................................9

        B.    Nazarathy ........................................................................................11

        C.    Quigley............................................................................................12

    III.    *Inter Partes* Review Proceedings ......................................................13

        A.    Initial Proceedings before the PTAB................................................13

        B.    Comcast's Prior Appeal ...................................................................19

        C.    Remand Proceedings before the PTAB ............................................19

            1.    Independent Claim 1 and Its Dependents .................................20

            2.    Independent Claim 27 and Its Dependents ...............................26

SUMMARY OF ARGUMENT ..............................................................................26

ARGUMENT ........................................................................................................29

    I.    Standards of Review.............................................................................29

    II.    A POSITA Would Have Been Motivated to Combine Julia with Nazarathy or Quigley. ...............................................................................30

        A.    Substantial Evidence Supports the Board's Factual Finding of Motivation to Combine....................................................................30

        B.    Promptu's Attacks on the Board's Decision Are Misplaced...........36

            1.    The Board Did Not Rest Its Decision on What "Could Be" Combined...................................................................................36

            2.    The Board Did Not Reject All Arguments on What "Would Be" Combined...................................................................................40

      3.    The Board Did Not Justify Its Decision with Only "Aspirational Platitudes." .................................................................................42

III.   Secondary Considerations of Non-Obviousness Are Insufficient ...........43

    A.   Substantial Evidence Supports the Board's Finding that Promptu Failed to Prove Nexus. .......................................................................44

        1.    Promptu Did Not Establish a Presumption of Nexus. ..............45

        2.    Promptu Did Not Show a Direct Nexus to Unique Characteristics of the Claimed Invention .................................47

    B.   Promptu's Critiques of the Final Written Decision Are Misplaced. 53

        1.    The Board Did Not Err in Addressing Presumed Nexus..........54

        2.    The Board Did Not Err in Addressing Direct Nexus...............57

CONCLUSION .......................................................................................................62

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
　949 F.3d 1360 (Fed. Cir. 2020) ........................................................61

*Alza Corp. v. Mylan Labs., Inc.*,
　464 F.3d 1286 (Fed. Cir. 2006) ........................................................31

*Apple, Inc. v. Evolved Wireless LLC*,
　No. IPR2016-01177, 2017 WL 6543970 (P.T.A.B. Dec. 20, 2017) ..................60

*Belden Inc. v. Berk-Tek LLC*,
　805 F.3d 1064 (Fed. Cir. 2015) ....................................................38, 40

*Bos. Sci. SciMed, Inc. v. Iancu*,
　811 F. App'x 618 (Fed. Cir. 2020) ....................................................45

*Campbell Soup Co. v. Gamon Plus, Inc.*,
　10 F.4th 1268 (Fed. Cir. 2021) ........................................................44

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
　847 F. App'x 881 (Fed. Cir. 2021) ....................................................49

*Chemours Co. v. Daikin Industries*,
　4 F.4th 1370 (Fed. Cir. 2021) ....................................................60, 61

*ClassCo, Inc. v. Apple, Inc.*,
　838 F.3d 1214 (Fed. Cir. 2016) ....................................................50, 60

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
　838 F. App'x 551 (Fed. Cir. 2021) ....................................................19, 20

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
　IPR2018-00343, Paper No. 56 (P.T.A.B. July 18, 2019) ..................................62

*In re Cree, Inc.*,
　818 F.3d 694 (Fed. Cir. 2016) ....................................................51, 52

**Page(s)**

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C. H. Patrick Co.*,
464 F.3d 1356 (Fed. Cir. 2006) ........................................................31

*Ecolochem v. S. Cal. Edison Co.*
227 F.3d 1361 (Fed. Cir. 2000) ........................................................39

*Ethicon Endo-Surgery, Inc. v. Covidien LP*,
812 F.3d 1023 (Fed. Cir. 2016) ........................................................48

*Everstar Merch. Co. v. Willis Elec. Co.*,
No. 2021-1882, 2022 WL 1089909 (Fed. Cir. Apr. 12, 2022)............8

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ........................................................35

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ....................................44, 46, 47, 60

*Game & Tech. Co. v. Activision Blizzard Inc.*,
926 F.3d 1370 (Fed. Cir. 2019) ........................................................29

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ........................................................31

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995) ..........................................................36

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ..................................................44, 45

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) ........................................................39

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................................................................30, 31

*Lectrosonics, Inc. v. Zaxcom, Inc.*,
IPR2018-01129, Paper No. 33 (P.T.A.B. Jan. 24, 2020) ..................57

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ............................................................... 59

*In re Mettke*,
   570 F.3d 1356 (Fed. Cir. 2009) .......................................... 36

*Novartis AG v. Torrent Pharms. Ltd.*,
   853 F.3d 1316 (Fed. Cir. 2017) .................................... 47, 60

*Personal Web Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017) ...................................... 38, 39

*PGS Geophysical AS v. Iancu*,
   891 F.3d 1354 (Fed. Cir. 2018) ................................... *passim*

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
   882 F.3d 1056 (Fed. Cir. 2018) .......................................... 44

*Qualcomm Inc. v. Intel Corp.*,
   6 F.4th 1256 (Fed. Cir. 2021) ............................................ 60

*Redline Detection, LLC v. Star Envirotech, Inc.*,
   811 F.3d 435 (Fed. Cir. 2015) ............................................ 29

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
   No. CV 19-005 (MN), 2020 WL 2128795 (D. Del. May 5, 2020) ................... 59

*In re Rouffet*,
   149 F.3d 1350 (Fed. Cir. 1998) .......................................... 39

*SAS Inst., Inc. v. ComplementSoft, LLC*,
   825 F.3d 1341 (Fed. Cir. 2016) .......................................... 60

*Shotkam LLC v. Tachyon, Inc.*,
   No. CV H-20-1070, 2021 WL 23311 (S.D. Tex. Jan. 4, 2021) ................ 59

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
   225 F.3d 1349 (Fed. Cir. 2000) .......................................... 35

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Soni*,
   54 F.3d 746 (Fed. Cir. 1995) ...............................................................56

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) ............................................................59

*In re Warsaw Orthopedic Inc.*,
   832 F.3d 1327 (Fed. Cir. 2016) ..........................................................39

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) .....................................................60, 61

**Statutes, Rules, & Regulations**

37 C.F.R. § 42.6 ...................................................................................53

37 C.F.R. § 42.23 ...................................................................................8

37 C.F.R. § 42.62 .................................................................................53

37 C.F.R. § 42.65 .................................................................................56

5 U.S.C. § 706 ......................................................................................29

Federal Rule of Evidence 802 .............................................................53

Federal Rule of Appellate Procedure 32 .............................................65

# STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Comcast Cable Communications, LLC states that IPR2018-00344 was previously before this Court in *Comcast Cable Communications, LLC v. Promptu Systems Corp.*, Nos. 19-2287 & 19-2288, 838 F. App'x 551 (Fed. Cir. Jan. 4, 2021) (Moore, Lourie, Schall). These were consolidated appeals from the United States Patent and Trademark Office Patent Trial and Appeal Board ("Board") in cases IPR2018-00344 and IPR2018-00345. This Court has also heard two previous appeals from IPR proceedings involving another patent owned by appellant Promptu Systems Corp. and asserted against appellee Comcast Cable Communications, LLC. *See Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, Nos. 19-1947 & 19-1948 (U.S. Patent No. 7,260,538).

Three companion appeals arising from other Board proceedings are also presently pending before this Court, all of which are captioned *Promptu Systems Corp. v. Comcast Cable Communications, LLC*. Case numbers 19-2368 and 19-2369 are consolidated appeals from IPR2018-00342 and IPR2018-00343, respectively, concerning U.S. Patent No. RE44,326, which is a continuation of the patent in issue in the present appeal. Case number 20-1253 is an appeal from CBM2018-00034, which also concerns the '326 patent. This Court has assigned these companion appeals to the same merits panel.

Promptu has also asserted the '196 patent in *Promptu Systems Corp. v. Comcast Corp. and Comcast Cable Communications, LLC*, No. 2:16-cv-06516 (E.D. Pa.), which may be directly affected by the Court's decision in this appeal. Both the '538 and '326 patents that were the subject of previous or pending appeals are also at issue in the Eastern District of Pennsylvania action.

These related cases may directly affect or be directly affected by this Court's decision in the pending appeal. Counsel for appellee is not aware of any other case that will directly affect or be directly affected by the Court's decision in this appeal.

**INTRODUCTION**

Appellant Promptu Systems Corporation is the owner of U.S. Patent No. 7,047,196, which generally pertains to voice recognition in a network supporting cable television and/or video delivery. Appellee Comcast Cable Communications, LLC petitioned for *inter partes* review of the '196 patent, and the Patent Trial and Appeal Board instituted proceedings to determine whether the claimed invention would have been obvious over two primary prior art references, alone or in combination with other references. In its final written decision, spanning roughly ninety pages, the Board concluded that claims 1, 2, 4–6, 12, and 13 of the '196 patent were unpatentable but that claims 27, 28, 30–32, and 38–42 were not. Appx89.

The Board correctly concluded that claims 1, 2, 4–6, 12, and 13 would have been obvious to a person of ordinary skill in the art ("POSITA") in light of the prior art. On appeal, Promptu does not dispute that the cited references, collectively, disclose all claim elements. Instead, it challenges only the Board's factual finding that a POSITA would have been motivated to combine the teachings of those references. But the Board supported its factual finding on motivation to combine with the references themselves, the state of the art, and expert testimony. Appx31-36. Indeed, this is the rare case in which the primary reference (Julia) specifically teaches that it must be implemented through "known" methods described in other references. Appx2600, 6:16-26. The Board explained that a POSITA seeking to

implement Julia would "naturally consider" the secondary references (Quigley and Nazarathy) because they describe "well known" techniques that "fit directly" into the primary art. Appx34-35.

Promptu's principal argument on appeal is that the Board "found only that [the pertinent references] 'could be' combined—not that it 'would' have been obvious to do so." Br.21. But that is demonstrably false. Based on the straightforward affirmative case that Promptu's brief essentially ignores (*see* Appx32-35), the Board expressly found that "a person of ordinary skill in the art *would have had a motivation to combine*" the prior art. Appx31 (emphasis added); *see also, e.g.*, Appx33-34. Contrary to Promptu's mischaracterizations, the final written decision presents a textbook application of law to facts that are easily supported by substantial evidence. The Board's obviousness determination should be affirmed.

Promptu also challenges the Board's findings with respect to secondary considerations of non-obviousness. But as the Board explained at length, Promptu failed to provide an evidentiary basis to establish the requisite nexus between the asserted objective indicia and the claimed invention. Appx38-49. The Board properly held Promptu to its burden of proof, and Promptu cannot fill this evidentiary void with post-hoc appellate advocacy.

This Court should affirm.

## STATEMENT OF THE ISSUES

1.      Whether substantial evidence supports the Board's factual finding that a person of ordinary skill in the art would have been motivated to combine the primary reference (Julia) with either of two secondary references (Nazarathy or Quigley).

2.      Whether substantial evidence supports the Board's factual finding that Promptu failed to carry its burden of demonstrating a nexus, presumptively or directly, between the asserted objective indicia of non-obviousness and the claimed invention.

## STATEMENT OF THE CASE

On Comcast's petition, the Board instituted *inter partes* review of the '196 patent, which relates to a voice-controlled system supporting cable television and/or video delivery. During the initial proceedings, the Board found claims 1, 2, 4-6, 12, 13, 27, 28, 30-32, and 38-42 were not unpatentable, and Comcast appealed. On appeal, this Court vacated the Board's patentability rulings for applying an incorrect claim construction and remanded for further proceedings. On remand, the Board held that claims 1, 2, 4-6, 12, and 13 were unpatentable but that claims 27, 28, 30-32, and 38-42 were not shown to be unpatentable. Promptu appeals the Board's ruling with respect to claims 1, 2, 4-6, 12, and 13.

# I.   Background

## A.   Promptu's AgileTV System

Promptu opens its statement of the case with a description of a supposedly "revolutionary system" for calling up cable television content that it marketed and sold under the name AgileTV. Br.3-6. Promptu boasts that AgileTV was "the first product to ever use voice-enabled remotes to control the delivery of video content over a cable network." *Id.* at 4. And it asserts that Comcast licensed the AgileTV system before "shelv[ing]" it and releasing its own "strikingly-similar voice recognition tool." *Id.* at 6 (citing Appx5117).

While it is true that Comcast licensed the AgileTV system for evaluation and nearly a decade later launched its own voice remote product, neither the alleged success of AgileTV (which Promptu vastly overstates) nor Comcast's alleged copying of it (of which Promptu has not offered evidence) negates the obviousness of the '196 patent. The Board ruled that Promptu failed to establish that "the AgileTV system embodies the claimed features" of the '196 patent, and that Promptu in any event overstated the success and praise generated by its product. Appx39; Appx45-48. Additionally, the Board found insufficient evidence (and explanation) that Comcast copied the AgileTV system. Appx48.

## B.   The '196 Patent

The '196 patent, titled "System and Method of Voice Recognition Near a Wireline Node of a Network Supporting Cable Television and/or Video Delivery,"

generally relates to "[a] method and system of speech recognition presented by a back channel from multiple user sites within a network." Appx97, Abstract.

According to the specification, "[t]he invention comprises a multi-user control system for audio visual devices that incorporates a speech recognition system that is centrally located in or near a wireline node, and which may include a Cable Television (CATV) Headend." Appx137, 5:11-15. By centrally locating the speech recognition functionality, the '196 patent purports to overcome bandwidth issues and help users locate and receive cable content more efficiently than in the prior art. Appx137, 5:3-10; Appx142, 15:1-15; Appx143, 17:35-54, 18:44-54.

Figure 3 illustrates an exemplary configuration of the cable system of the '196 patent. In this embodiment, "remote control unit 1000" is coupled to "set-top apparatus 1100." Appx139, 9:48-49. "Set-top apparatus 1100 communicates through distributor node 1300 across a high-speed physical transport 1400 to a tightly coupled server farm 3000, possessing various delivery points 1510 and entry points 1512-1518." Appx139, 9:52-55. The system includes a central "speech recognition processor system 3200." Appx102, Fig. 3. Server farm 3000 includes a central "speech recognition processor system 3200," comprised of "one or more tightly coupled server arrays," for processing speech signals from user sites, such as from subscribers' set-top boxes. *Id.*; Appx139, 9:56-58.



FIG. 3

Appx102, Fig. 3.

Figure 10 depicts a flowchart of a preferred method in accordance with the invention, which "use[s] a back channel from a multiplicity of user sites containing a multiplicity of identified speech channels presented to a speech processing system at a wireline node." Appx138, 7:42-46; *see also* Appx145, 22:8-15. Specifically, in this embodiment, the system first "receiv[es] the back channel to create a received back channel." Appx145, 22:18-19. Next, the system "partition[s] the received back channel into a multiplicity of received identified speech channels." Appx145, 22:25-

26. The system then "performs processing [of] the multiplicity of the received identified speech channels to create a multiplicity of identified speech content." Appx145, 22:30-32. Finally, the system "respond[s] to the identified speech content to create an identified speech content response, for each of the multiplicity of the identified speech contents." Appx145, 22:38-40.



Appx109, Fig. 10.

In IPR2018-00344, Comcast challenged claims 1, 2, 4-6, 12, 13, 27-28, 30-32, and 38-42. Claims 1, 2, 4-6, 12, and 13 are at issue here. Appx2-4. Claim 1 recites:

> 1. A method of using a back channel containing a multiplicity of identified speech channels from a multiplicity of user sites presented to a speech processing system at a wireline node in a network supporting

at least one of cable television delivery and video delivery, comprising the steps of:

> receiving said back channel to create a received back channel;

> partitioning said received back channel into a multiplicity of received identified speech channels;

> processing said multiplicity of said received identified speech channels to create a multiplicity of identified speech content; and

> responding to said identified speech content to create an identified speech content response that is unique, for each of said multiplicity of identified speech contents.

Appx159-160, 50:62-51:10. All other claims at issue depend from claim 1.

## II. The Prior Art

Three prior-art references are principally at issue in this appeal—one primary reference (Julia) and two secondary references (Nazarathy and Quigley).[1]

---

[1] Comcast also asserted obviousness based on U.S. Patent No. 7,013,283 ("Murdock"), alone and in combination with various secondary references. Promptu never denied that Murdock discloses all claim elements (Appx770), arguing instead that it did not constitute prior art for reasons of timing. Appx768-770. The Board ultimately held that Comcast had not shown that Murdock was prior art to the '196 patent (Appx66-80), and refused to consider contrary arguments raised in Comcast's reply. Appx75. Comcast has explained in the '326 IPR appeal why this was legal error. *See* Brief for Appellee, *Promptu Sys. Corp. v. Comcast Cable Commc'ns, LLC*, Nos. 19-2368 & 19-2369, at 55-62 (Fed. Cir. Apr. 11, 2022). Because the Board's reasoning that Murdock is not prior art was substantially the same in both proceedings, Comcast adopts those arguments by reference here to avoid duplication. Moreover, a recent decision from this Court provides further confirmation that the Board erred when it refused to consider Comcast's reply below. *Everstar Merch. Co. v. Willis Elec. Co.*, No. 2021-1882, 2022 WL 1089909, at *3 (Fed. Cir. Apr. 12, 2022) ("Where a petitioner on reply 'cites no new evidence and merely expands on a previously argued rationale,' it is an abuse of discretion for the Board to reject the reply as improper under 37 C.F.R. § 42.23(b)."). In the

### A. Julia

U.S. Patent No. 6,513,063 ("Julia"), titled "Accessing Network-Based Electronic Information Through Scripted Online Interfaces Using Spoken Input," discloses "the navigation of electronic data by means of spoken natural language requests." Appx2589; Appx2598, 1:17-19. A preferred embodiment of Julia, depicted in Figure 1a, describes the transmission, processing, and response to a voice input request, such as in a home entertainment setting. Appx2599, 3:37-4:45.



**Fig. 1a**

Appx2591, Fig. 1a.

---

unlikely event of a second remand in the '196 appeal, the Board should be instructed to consider Murdock as additional invalidating prior art.

Specifically, Figure 1a "illustrates a system providing a spoken natural language interface for network-based information navigation[] … with server-side processing of requests." Appx2599, 3:6-9. "[A] user's voice input data is captured by a voice input device 102," which can be "a portable remote control device with an integrated microphone." Appx2599, 3:39-43, 3:46-48. "The voice data is then transmitted across network 106 to a remote server or servers 108." Appx2599, 3:54-55. Once received at the servers, "the voice data is processed by request processing logic 300 in order to understand the user's request and construct an appropriate query or request for navigation of remote data." Appx2599, 3:61-64. After the requested information is retrieved in response to the query, "it is electronically transmitted via network 106 to the user for viewing on client display device 112." Appx2599, 4:18-20. Communications box 104 is used "for receiving and decoding/formatting the desired electronic information that is received across communications network 106." Appx2599, 4:27-30.

Julia teaches that "multiple users, each having their own client input device, may issue requests[] simultaneously." Appx2600, 6:12-13. Julia explains, for example, that the data source of Figure 1a is "constructed to support access requests from simultaneous multiple network users." Appx2600, 6:16-19. Although Julia does not describe additional specifics of partitioning multiple requests, Julia acknowledges that such implementations are "known by practitioners of ordinary

skill in the art." Appx2600, 6:19-20. Indeed, as described below, Nazarathy and Quigley are two references known to persons of ordinary skill in the art that describe distinguishing multiple users' signals at a cable headend.

## B.  Nazarathy

U.S. Patent No. 6,490,727, titled "Distributed Termination System for Two-Way Hybrid Networks," describes "hybrid fiber coaxial cable networks such as [those] used in cable television where two-way digital communications are desired." Appx2609, Abstract. As part of such cable networks, Nazarathy discloses demultiplexing a multiplexed signal from multiple different users at a cable network headend. Appx2641, 14:62-64. For example, Figure 9 of Nazarathy illustrates a Wavelength Division Multiplexing ("WDM") and Time Division Multiplexing ("TDM") network showing how data from multiple home terminals (HT 18-1, … 18-n) (e.g., a cable modem or set-top box) is multiplexed and transmitted to the cable headend (HE 202). Appx2635, 1:21-27; Appx2641, 14:6-8. The WDM or TDM data is then demultiplexed at the headend. Appx2641, 14:62-64; Appx2642, 15:40-46.



FIG. 9

Appx2619, Fig. 9.

### C. Quigley

U.S. Patent No. 6,650,624 ("Quigley"), titled "Cable Modem Apparatus and Method," describes "[a] number of features for enhancing the performance of a cable transmission system in which data is transmitted between a cable modem termination system at a headend and a plurality of cable modems." Appx2654, Abstract; *see also* Appx2738, 1:32-35. Figure 1, for example, illustrates "a hybrid fiber coaxial (HFC) network showing typical pathways for data transmission between the headend (which contains the cable modem termination system) and a plurality of homes (each of which contain a cable modem)." Appx2739, 3:56-60. Quigley implements "[f]requency domain multiple access (FDMA)/time domain multiple access (TDMA)"—i.e., forms of multiplexing—"to facilitate

communication from each cable modem to the cable modem termination system."

Appx2742, 9:8-11, 48-52. Thus, in Quigley, "[t]he upstream channel … [is]

partitioned … such that each of a plurality of cable modems 12 may transmit data

packets to the cable modem termination system 10 without interfering with one

another." Appx2760, 46:34-39.



Appx2656, Fig. 1.

## III. *Inter Partes* Review Proceedings

### A. Initial Proceedings before the PTAB

On December 19, 2017, Comcast petitioned for *inter partes* review of claims

1, 2, 4-6, 12, 13, 27, 28, 30-32, and 38-42 of the '196 patent, alleging, inter alia, that

the challenged claims would have been obvious over Julia in combination with

various secondary references. Appx512-514. The Board instituted IPR on all claims challenged in IPR2018-00344 on July 2, 2018.

**1.** In the petition, Comcast showed that Julia in combination with either Nazarathy or Quigley discloses all elements of the challenged claims. Appx553-578. On its own, Julia discloses receiving a back channel, partitioning the received back channel into a multiplicity of received identified speech channels, processing the received identified speech channels to create a multiplicity of identified speech content, and responding to the identified speech content to provide a response, as required by claim 1. Appx553-558.

With respect to the claimed "partitioning" step, Comcast's petition explained that Julia states that "multiple users, each having their own client input device, may issue requests, simultaneously or otherwise, for navigation of data source 210," and that existing systems known to persons of ordinary skill in the art had "already been constructed to support access requests from simultaneous multiple network users." Appx556 (citing Appx2600, 6:13-21). Comcast further explained that "Nazarathy and Quigley both disclose techniques for 'partitioning' an upstream data channel carrying multiple user signals at a central cable headend." Appx557.

The petition additionally showed that "[a] person of ordinary skill in the art would have naturally considered Nazarathy and Quigley in connection with the system disclosed by Julia." Appx571. Specifically, the petition explained that "Julia

discloses a system that transmits voice commands from multiple users to a central remote server computer, but is not limited to any particular techniques or to a particular physical network architecture used to implement its system." Appx571. To fill in additional information regarding these techniques, Nazarathy and Quigley "describe particular upstream communication techniques and physical network implementations," which a person of ordinary skill in the art would understand could be implemented in Julia's voice control system." Appx571-572. In short, as the petition summarized, "Julia's disclosure of multiple cable subscribers accessing a central remote server (i.e., cable headend) suggests techniques like those disclosed in Nazarathy or Quigley." Appx572.

**2.** In its patent owner response, Promptu argued that Comcast failed to explain how Julia teaches the "receiving said back channel to create a received back channel" limitation. Appx772. Promptu argued that "[t]he receiving element of claim 1 requires two parts: 'receiving' a first element ('said back channel') 'to create' a second element ('a received back channel')," and that Comcast "never addresses how any of the references, Julia, Nazarathy, or Quigley, creates a received back channel." Appx772 (emphases omitted). Thus, according to Promptu, Comcast's petition failed as a matter of law. Appx777.

Promptu next argued that "[t]he petition's stated motivations to combine Julia with Nazarathy or Quigley, are facially deficient." Appx783-785. Promptu criticized

Comcast's analysis of motivations to combine as "fall[ing] within mere three paragraphs," two of which "simply allege that the references fall within the same technical field and would have been considered by a POSITA," while the third is a "woefully deficient" attempt to explain "why a POSITA would have been motivated to combine all of the various challenged features of the claims based on the teachings of the different references." Appx784.

Finally, Promptu argued that "several objective indicia … provide compelling additional evidence that the challenged claims were nonobvious," based primarily on Promptu's AgileTV system allegedly embodying the claimed invention. Appx791. Promptu contended that a nexus exists between the objective indicia and the claimed invention, based either on a presumption because the AgileTV system embodies the claimed invention or on direct evidence of nexus. Appx792-795. Promptu then described the purported objective indicia of nonobviousness, including satisfaction of a long-felt but unmet need, substantial industry praise, perceived commercial success, and Comcast's alleged licensing and copying of the claimed invention. Appx795-802. Promptu supported these arguments with the testimony of Dr. Chaiken, Promptu's former Chief Technology Officer. Appx5222-5236.

**3.** In its reply, Comcast explained that Promptu had improperly construed the single "receiving" limitation to require two separate claim steps: "receiving said

back channel" and "creating a received back channel." Appx871. As Comcast further explained, Promptu's construction was inconsistent with the claim language, which recites the single step of "***receiving*** said back channel ***to create*** a received back channel." Appx871. As Comcast demonstrated, Julia discloses the "receiving" limitation because when the remote server in Julia receives the back channel, it creates the received back channel. Appx871-872.

With respect to motivation to combine, Comcast explained that "a person of ordinary skill in the art 'would have naturally considered Nazarathy and Quigley in connection with the system disclosed by Julia,'" as those references disclose the details of the "partitioning" left open by Julia. Appx875.

Finally, with respect to secondary considerations of non-obviousness, Comcast explained that Promptu's arguments regarding nexus (including the declaration of Dr. Chaiken) were conclusory and circular. Appx880-881. Furthermore, Comcast showed that for each of the specific alleged secondary considerations, Promptu's showing was deficient:

- Promptu failed to establish a "*long-felt* need" because Promptu argued that the need for a tool to navigate large amounts of content arose in 2000—the same year the provisional application for the '196 patent was filed (Appx882-883);

- The only purported "industry praise" was directed to the "ease" of voice searching, which was a feature existing in the prior art (Appx883-884);

- Promptu had not shown the challenged claims were "commercially valuable" where Promptu received limited revenue for the product and ultimately abandoned the product allegedly covered by the claims (Appx885-886); and

- Promptu had not presented any admissible evidence that Comcast "copied" its voice recognition technology (Appx887).

**4.** On June 28, 2019, the Board concluded in a final written decision that Comcast had not shown that any of the challenged claims were unpatentable. Appx1454. The Board found that the only claim term requiring an express construction was "receiving a back channel to create a received backchannel." Appx1471. The Board construed that limitation to require, as Promptu had argued, separate steps of "receiving said back channel" and "creating a received back channel." Appx1475-1477. Under that construction, the Board found that Comcast showed "how Julia teaches 'receiving said back channel' (signals transmitted over network 106 (*i.e.*, 'back channel') by remote server 108) but not the creation of a separate 'received back channel.'" Appx1478. On this basis, the Board concluded that Comcast had not established that the challenged claims were unpatentable. Appx1486. The Board did not reach the issues of motivation to combine Julia with Nazarathy or Quigley or secondary considerations of non-obviousness.

## B.    Comcast's Prior Appeal

Comcast appealed the Board's June 28, 2019 final written decision to this Court. On appeal, Comcast argued that the Board, at Promptu's urging, applied an incorrect claim construction for the "receiving" limitation. This Court agreed. *See Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 551, 554 (Fed. Cir. 2021). This Court held that the claimed "back channel" and "received back channel" did not necessarily refer to distinct elements. *Id.* Rather, as this Court explained, "the broadest reasonable interpretation of 'received back channel' is a 'back channel that has been received.'" *Id.* Because the final written decision was predicated on an erroneous construction, the Court vacated the Board's decision as to the patentability of claims 1, 2, 4-6, 12, 13, 27, 28, 30-32, and 38-42 and remanded for the Board to consider the parties' arguments under the correct construction. *Id.*[2]

## C.    Remand Proceedings before the PTAB

On remand, the Board allowed the parties to file simultaneous briefs limited to addressing this Court's claim construction ruling. Appx1539. Comcast argued in its remand briefing that Julia discloses the step of "receiving said back channel to create a received back channel," as recited in independent claims 1 and 27, under the

---

[2]    The prior appeal also involved IPR2018-00345, in which claims 14, 15, 17-19, 25, 26, 53-55, 61, 62, and 64-66 were found not to be unpatentable. This Court affirmed the Board's decision with respect to IPR2018-00345, 838 F. App'x at 554, and the claims at issue in the '345 IPR are not the subject of this appeal.

Federal Circuit's construction of the limitation (which was the construction Comcast had pressed before the Board). Appx1560-1561. Promptu argued that this Court's resolution of the patentability of claims 14 and 53 in the '345 IPR resolved Comcast's challenge to claim 27 (and its dependents). Appx1549-1551; Appx1584. With respect to claim 1 and its dependents, Promptu did not dispute that Julia disclosed the "receiving" step under the Federal Circuit's construction; instead, Promptu reiterated its argument that Comcast had not shown a motivation to combine Julia with the other references relied on in the IPR (e.g., Nazarathy and Quigley).

The Board issued a final written decision on remand on August 25, 2021, holding that claims 1, 2, 4-6, 12, and 13 of the '196 patent were unpatentable but that claims 27, 28, 30-32, and 38-42 were not. Appx89.

### 1.    Independent Claim 1 and Its Dependents

In its remand decision, the Board recited and applied this Court's holding that "the broadest reasonable interpretation of 'received back channel' is a 'back channel that has been received.'" Appx14 (quoting *Comcast*, 838 F. App'x at 554). Applying that construction, the Board determined that Julia disclosed the step of "receiving said back channel to create a received back channel." Appx28. The Board explained that Promptu's only rebuttal arguments with respect to this limitation were

"premised on a claim construction that was rejected by the Federal Circuit." Appx27. Promptu does not challenge this finding on appeal.

### a. Motivation to Combine

The Board ruled that the combination of Julia and either Nazarathy or Quigley discloses the sole claim step not disclosed in Julia alone—*i.e.*, "partitioning said received back channel into a multiplicity of received identified speech channels." Appx28-31. Additionally, the Board made detailed findings that a person of ordinary skill in the art would have been motivated to combine Julia with Nazarathy or Quigley "to allow Julia's remote server to receive and process requests from multiple users simultaneously, as it discloses." Appx31-36; Appx49-50. Specifically, the Board first explained that while Julia "teaches that 'multiple users, each having their own client input device, may issue requests simultaneously,'" "Julia does not describe all implementation details." Appx32 (citing Appx2600, 6:12-16). Julia does, however, "indicate that a person of ordinary skill in the art would know how to accommodate requests from multiple users." Appx32 (citing Appx2600, 6:16-26). The Board then explained that "Nazarathy and Quigley each disclose that multiple user requests are sent from different cable modems … to a central cable headend by including these requests on a common upstream channel and then, at the headend, dividing them into separate requests (or, in the parlance of the claim, 'partitioning' them)." Appx32.

The Board summarized the testimony of Comcast's expert, Mr. Schmandt, on a POSITA's motivation to combine these references, which the Board "credited … because it is logical and supported by the cited references and because there is no persuasive evidence to the contrary." Appx34. Mr. Schmandt explained, for example, *how* the "partitioning" described in Nazarathy and Quigley would be implemented in Julia, and that a person of ordinary skill in the art would have had a reasonable expectation of success in making the combinations. Appx34-35.

The Board expressly disagreed with "Patent Owner's argument that the Petition's analysis of the rationale to combine is insufficient to show a motivation to combine." Appx35-36. In doing so, the Board rejected the testimony of Promptu's expert, Mr. Tinsman, because it simply "provides legal arguments, not technical expertise." Appx35.

Finally, the Board reiterated that Nazarathy and Quigley each provide the implementation details of the "partitioning" limitation missing in Julia, which "an ordinary artisan would have found … obvious to implement [for] Julia's processing of multiple user requests in a cable network." Appx49-50.

### b.    Secondary Considerations of Non-Obviousness

The Board rejected Promptu's contention that "there are objective indicia of nonobviousness 'based on the success and acclaim of an AgileTV system

embodying the invention of the '196 patent.'" *See* Appx37-49. Ultimately, the Board accorded "no weight" to the alleged objective indicia of non-obviousness. Appx38.

The Board first found that Promptu "fails to show a nexus between its alleged objective indicia and the merits of the claimed invention." Appx38. The Board rejected the testimony of Dr. Chaiken, Promptu's former Chief Technology Officer, because the testimony "focuse[d] on the contents of the *disclosure* of the '196 patent rather than whether a *claim* of the '196 patent covers, and is coextensive with, the AgileTV system." Appx39. On the relevant issues, the Board explained, Promptu "provides no explanatory argument or evidence—in fact, Patent Owner does not identify *which claim* is allegedly embodied in the AgileTV system." Appx39 (emphasis in original). At most, according to the Board, Promptu provided a "lone sentence" vaguely describing elements of AgileTV that are "somewhat similar to the limitations of claim 1." Appx40. This, however, was insufficient to establish that AgileTV practiced a claim of the '196 patent. Appx40-41. The Board additionally explained that Promptu "fail[ed] to show that the AgileTV system is coextensive with claim 1" because it had made no meaningful effort to "address the degree of correspondence between its product and the patent claim." Appx41. To the contrary, the Board explained that Promptu's own evidence on its face "indicates that the AgileTV system included important, unclaimed features that materially impacted its functionality, relating to the accuracy and ease-of-use of its voice recognition

technology"—AgileTV was thus not coextensive with the claims of the '196 patent. Appx41.

The Board also rejected Promptu's arguments of direct evidence of nexus. Appx42-44. It found, for example, that Promptu "skips the nexus requirement entirely" because "it does not consider whether there is any connection between the evidence and the claimed invention." Appx42-43. The Board also rejected Promptu's arguments of direct evidence of nexus because Promptu misapprehended the scope of the claimed invention. Appx43.

Finally, the Board rejected the specific arguments and evidence for each of the individual alleged objective indicia, as explained below:

*There Was No Long-Felt but Unmet Need.* The Board found that Promptu provided no persuasive evidence of "long-felt but unmet need for using voice recognition in cable systems." Appx44-45. Promptu, according to the Board, "[a]t most … demonstrates a connection between its evidence and the general concept of voice recognition in cable systems"—not a connection to the unique characteristics of the claimed invention. Appx44.

*AgileTV Did Not Receive Industry Praise.* The Board found that Promptu's evidence of industry praise bore no connection to the claimed invention. To the contrary, the evidence showed, at best, that "AgileTV received attention for a feature

that is not recited in the challenged claims—namely, voice recognition technology." Appx45.

*AgileTV Was Not Commercially Successful.* The Board rejected Promptu's argument that "millions of dollars" of investment constituted commercial success. Appx46. The Board found, for one, that Promptu failed to tie those investments to the challenged claims. Appx46. The Board additionally found that "show[ing] that [AgileTV] had investors" is not the same as showing "that the AgileTV system itself was commercially successful." Appx46 n.16. Indeed, "the evidence does not show any significant revenue for that product"—i.e., AgileTV. Appx46 n.16.

*Comcast's License Agreement.* The Board rejected Promptu's argument that Comcast's "License and Development Agreement" (LDA) with Promptu was relevant, as its purpose "was to evaluate the AgileTV system for possible deployment in [Comcast's] products." Appx47. While the LDA included a "license to the yet-to-be-issued '196 patent," "the parties entered into that agreement for reasons unrelated to the '196 patent." Appx47. Thus, the LDA does not show a sufficient nexus with the '196 patent.

*Comcast Did Not Copy AgileTV.* The Board found that there was no evidence that Comcast copied AgileTV or the claimed invention. Appx48-49. Promptu failed to provide any explanation as to the contents or significance of its purported evidence of copying—preliminary infringement contentions and an instruction video for

25

Comcast cable. Appx48. Additionally, the Board excluded hearsay statements from Dr. Chaiken that his acquaintances told him that "they confused Comcast's functionality with the AgileTV solution" (a finding that Promptu does not challenge on appeal). Appx48. Promptu was thus left without *any* evidence supporting its allegations of copying.

At bottom, after considering Promptu's arguments and evidence on objective indicia of non-obviousness, the Board found that Promptu "fail[ed] to show a nexus between the evidence [of secondary considerations] … and the claimed invention," and thus it "accord[ed] no weight to [this] evidence of nonobviousness." Appx49.

## 2. Independent Claim 27 and Its Dependents

Finally, the Board held that claims 27, 28, 30-32, and 38-42 were not unpatentable. Appx66. The Board determined that Comcast failed to establish that Julia teaches a "speech recognition system coupled to a wireline node in [a] network," as required by independent claim 27, reasoning that the petition pointed to Julia's remote server 108 as being both the "speech recognition system" and the "wireline node" but that "the claim required two different components." Appx64. Comcast does not challenge these rulings in this appeal.

## SUMMARY OF ARGUMENT

I. Substantial evidence supports the Board's factual finding that a POSITA would have been motivated to combine Julia with Nazarathy or Quigley.

The Board adopted a straightforward explanation for motivation to combine: specifically, (1) Julia explicitly teaches that it can be implemented as suggested, including on a cable TV network, by using "known" methods that Julia does not expressly describe (Appx32-33; Appx2600, 6:16-26); and (2) "Julia's disclosure suggests the combination" with Quigley or Nazarathy because those secondary references describe the "well known" techniques that "fit directly" into the communication needs explicitly identified in Julia (Appx30-35). The Board reviewed "the totality of the record" and accepted that intuitive account as supported by the references themselves, the state of the art, and expert testimony. Appx31-36.

On appeal, Promptu argues that the Board "found only that [the prior art] 'could be' combined—not that it 'would' have been obvious to do so," Br.21; that it "rejected every reason offered for why an artisan '*would* have been motivated … to make the proposed invention'," Br.1; and that it relied exclusively upon "sheer physical possibility" or vacuous "platitudes," Br.21-28. Each of those arguments flatly mischaracterizes the final written decision. The Board's actual findings—including its express finding that a POSITA "would have had a motivation to combine" the cited references (Appx31; Appx36)—are amply supported by substantial evidence in the record.

II.    Substantial evidence likewise supports the Board's factual determination that Promptu failed to carry its burden of demonstrating a nexus, in fact or presumed, between AgileTV and the claims of the '196 patent.

With respect to the presumption, Promptu bore the burden of showing that Agile TV not only embodies a particular claim, but is *coextensive* with it. The Board found correctly that Promptu had made no meaningful effort to meet that burden because it (1) never tried to "identify *which claim* is allegedly embodied in the AgileTV system," (2) "provide[d] no explanatory argument or evidence" on how AgileTV embodied any such claim, and (3) "fail[ed] to address the degree of correspondence between its product and the patent claim." Appx39; Appx41.

On appeal, Promptu primarily faults the Board for "ignor[ing] unrebutted factual testimony." Br.33-36. Once again, this simply mischaracterizes the final written decision. The Board explained that it declined to credit Dr. Chaiken's declaration because Promptu itself "d[id] not appear to rely on [the testimony] to show that the AgileTV embodied the claims," and because the declaration merely parroted the patent without explaining *how* AgileTV embodied any particular claim. Appx40. Promptu also raises a grab bag of objections to the Board's findings with respect to long-felt need, industry praise, commercial success, prior licensing, and copying; but none comes close to surmounting the substantial evidence standard. Indeed, Promptu never even disputes the Board's finding that any long-felt need was

only for "the general" and *non-novel* "concept of voice recognition in cable systems." Appx44-45. In this and other respects, the Board committed no error at all, let alone prejudicial error.

## ARGUMENT

### I. Standards of Review

This court "review[s] the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Game & Tech. Co. v. Activision Blizzard Inc.*, 926 F.3d 1370, 1375 (Fed. Cir. 2019) (quoting *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015)). Substantial evidence requires "something less than the weight of the evidence but more than a mere scintilla of evidence, meaning that it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation and alteration omitted). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Id.* at 1375-76 (citation omitted). In addition, the Administrative Procedure Act sets out a "rule of prejudicial error," 5 U.S.C. § 706, under which "challengers of the agency action [bear] the burden of showing prejudice." *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1362 (Fed. Cir. 2018). Because Promptu challenges the factual findings underlying the Board's motivation to combine and

secondary consideration analyses, it bears the heavy burden of overcoming the substantial evidence standard *and* demonstrating prejudice as a result.

## II. A POSITA Would Have Been Motivated to Combine Julia with Nazarathy or Quigley.

The Board found claims 1, 2, 4, 12, and 13 of the '196 patent to be obvious over Julia in combination with Nazarathy *or* Quigley. Appx50; Appx53; Appx63; *see also* Appx6 (table of claims against references). The Board found that both combinations disclose all elements of claim 1 of the '196 patent, that the combinations would have been "predictable" to a POSITA and within her skill, and that a POSITA would have been motivated to make the combinations. Appx31. On appeal, Promptu does not contest that the combinations were predictable or that they disclose all claim elements. Instead, Promptu challenges only the Board's finding that a POSITA would have been motivated to combine the references. Br.21-29. Because this finding was supported by substantial evidence, this Court should affirm.

### A. Substantial Evidence Supports the Board's Factual Finding of Motivation to Combine.

Motivation to combine is present whenever a POSITA would have "a reason … to combine the elements in the way the claimed new invention does." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (emphasis added). That test is "quite flexible and not only permits, but *requires,* consideration of common knowledge and

common sense." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C. H. Patrick Co.*, 464 F.3d 1356, 1367 (Fed. Cir. 2006). The motive "can come from the knowledge of those skilled in the art, from the prior art reference itself, or from the nature of the problem to be solved"—or any combination of the three. *PGS Geophysical AS*, 891 F.3d at 1365. The combination "does not have to be found explicitly in the prior art," but instead "may be found *implicitly* in the prior art." *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1290-91 (Fed. Cir. 2006). "Under the correct analysis, *any need* or problem known in the field of endeavor at the time of invention … can provide a reason for combining the elements in the manner claimed." *KSR Int'l*, 550 U.S. at 420 (emphasis added).

"The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact" reviewed for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000) (citation omitted). The Board's motivation-to-combine analysis reflects a straightforward application of settled standards to the evidence in the administrative record, easily surpassing the low threshold of substantial evidence.

The Board recognized that the motivation-to-combine question was neither complex nor difficult, in light of Julia's express teachings. The Board explained that Julia specifically teaches transmitting multiple user requests simultaneously over a cable TV network, and while it omits certain "details" regarding the "partitioning"

step, Julia further explains that such techniques are "known" to those of skill in the art. Appx32-33. Comcast's expert, Mr. Schmandt, further explained that anyone seeking to implement Julia would "naturally consider the teachings of Nazarathy and Quigley [both] because they disclose methods for bi-directional communication that *fit directly into the communication needs of Julia*" and also because the partitioning methods they describe reflect "well-known technique[s]" in the field. Appx34 (quoting Appx3193-3195 (Schmandt declaration) ¶ 443 (emphasis added)); Appx 3019 ¶ 88 (citing Appx136, 3:44-52 (describing multiplexing in the background of the invention))). In other words, Nazarathy or Quigley would inform any skilled artisan seeking to implement Julia on a cable TV network, exactly "as Julia suggests." Appx34. The Board credited Mr. Schmandt's testimony as both "logical and supported by the cited references," (Appx34), and thus accepted Comcast's simple and clear argument that "Julia's disclosure [itself] suggests the combination." Appx30.[3]

The Board provided a thorough explanation of *how* the prior art would fit together. Julia, the primary prior art reference, teaches the following: (1) "multiple users, each having their own client input device, may issue requests[]

---

[3]  Mr. Schmandt discussed and cited to Appx2599-2600 (Julia): 4:31-35, 6:12-26); Appx2609, Appx2635, Appx2641 (Nazarathy): Abstract, 1:6-9, 13:64-14:46, 14:62-64; Appx2741-2742, Appx2760, Appx2763 (Quigley): 8:55-60, 9:56-10:3, 10:41-48, 46:32-40, 51:49-53). *See* Appx3191-3196.

simultaneously" over the back channel (Appx32); (2) "remote server 108 processes the voice data sent by the user(s) to determine each user's command" (Appx32); and (3) Julia's "techniques may be implemented in a network supporting cable television delivery" (Appx32). With respect to the first point, the Board noted that "Julia does not describe all implementation details." Appx32. In particular, "Julia does not address how multiple requests would be transmitted to the remote server 108 in a cable network." Appx32. "Julia does, however, indicate that a person of ordinary skill in the art would know how to accommodate requests from multiple users." Appx32 (citing Appx2600, 6:12-26); Appx2600, 6:12-26 (Julia: noting that a "data source 210" had "typically *already been constructed* to support access requests from simultaneous multiple network users, as known by practitioners of ordinary skill in the art" (emphasis added)). Thus, the Board found that Julia teaches transmitting multiple user requests simultaneously over a cable network, and though it "does not describe all implementation details," it explains that such techniques are "known" to those of skill in the art.

The Board then carefully explained how and why a POSITA would look to either Nazarathy or Quigley—the secondary prior art references—for the necessary details to implement Julia over a cable television network. In the Board's words, "Nazarathy or Quigley each disclose[s] that multiple user requests are sent from different cable modems (located at subscribers' homes) to a central cable headend

by including these requests on a common upstream channel and then, at the headend, dividing them into the separate requests (or, in the parlance of the claim, 'partitioning' them)." Appx32. Nazarathy, the Board explained, specifically teaches partitioning of a "cable television network" through a known method called "multiplexing." Appx32-33 (citing Appx2609, Abstract; Appx2635, 1:6-31; Appx2641, 13:64-14:46, 14:62-64).[4] Quigley likewise teaches "partition[ing]" on "[c]ontemporary cable modem systems," which "utilize time division multiple access (TDMA) in order to facilitate communication between a plurality of cable modems and a single cable modem termination system on each upstream channel." Appx33 (quoting Appx2760, 46:32-40; Appx2742, 9:48-55).

Promptu's accusations of hindsight bias (Br.1, 22) founder on this evidentiary record. Promptu does not dispute on appeal that Julia teaches a system of receiving voice commands from multiple users in a cable television network while leaving out one implementation detail (partitioning), or that Julia *itself* explains that this detail has "already been constructed" by prior art and is "known by practitioners of ordinary skill in the art." Appx2600, 6:12-26. Promptu also does not expressly dispute that Quigley and Nazarathy describe "well known" techniques that "fit

---

[4]  The Board, in a finding that Promptu does not dispute, held that multiplexing on the upstream channel qualifies as "partitioning" as used in the claims. Appx34-35 (citing Appx3018-3019 ¶¶ 87-88)).

directly" into Julia, and thus fill the explanatory gap that enables Julia to be implemented in a cable TV network, as Julia suggests. The combinations found by the Board are clearly suggested, if not compelled, by the prior art itself: (1) Julia *requires* precisely this kind of combination for its teachings to be implemented in the first place; (2) Julia itself identifies the particular explanatory gap to be filled and further explains that that omitted details are "known" in the field; and (3) the secondary references—Quigley or Nazarathy—describe "well known" techniques either one of which would "fit[] directly" into the gap that Julia expressly identifies.

Here, the "simple affirmative case for motivation" is easily supported by substantial evidence. *PGS Geophysical AS*, 891 F.3d at 1365. This Court regularly affirms motivation-to-combine findings in analogous circumstances. *See*, *e.g.*, *Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343-44 (Fed. Cir. 2020) (finding motivation to combine where primary art does "not explicitly describe [an] underlying" implementation detail, and secondary art "would be a straightforward and predictable choice" to fill the descriptive gap); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000) ("[T]hese undisputed teachings in the prior art, as filtered through the knowledge of one skilled in the art, ... as well as the nature of the problem to be solved, provide a suggestion and motivation to use the Stumpo cells, which have heterologous cell surface receptors, in drug screening methods." (quotations omitted)); *see also In re*

*Mettke*, 570 F.3d 1356, 1360-61 (Fed. Cir. 2009) (similar); *In re GPAC Inc.*, 57 F.3d 1573, 1581-82 (Fed. Cir. 1995).

## B. Promptu's Attacks on the Board's Decision Are Misplaced.

Promptu never squarely engages with the Board's straightforward analysis in its brief and instead attempts to manufacture legal error by misrepresenting the Board's reasoning. By Promptu's account, the Board "rejected every reason offered for why an artisan '*would* have been motivated … to make the proposed invention'" and rested its conclusion exclusively on "sheer physical possibility" and vacuous "platitudes." Br.1, 21-28. That is all false.

### 1. The Board Did Not Rest Its Decision on What "Could Be" Combined.

Promptu's main argument is that the Board "found only that [the prior art] 'could be' combined—not that it 'would' have been obvious to do so." Br.21; *see also id.* at 1, 2, 9, 17, 22-24. That is simply untrue. The Board accepted Comcast's evidence (Appx32-33), and was thus "persuaded that a person of ordinary skill in the art *would have had a motivation to combine* Julia's system with partitioning []as disclosed in Quigley and Nazarathy." Appx31; Appx33. That finding—which, as discussed above, is supported by substantial evidence—is alone a sufficient basis for affirmance.

Promptu nonetheless complains "the words 'can be' or 'could be' [appear] consistently throughout [the Board's] analysis." Br.23. But Promptu's excerpts strip

out the relevant context and distort the Board's clear meaning as a result. Here are

the four instances in which the Board used the "can be"/ "could be" formulation in

its motivation-to-combine analysis:

- *First,* the Board cited Comcast's argument "that an ordinary artisan would have considered Nazarathy and Quigley in connection with Julia because '[a] skilled artisan would have known that Julia's voice control system *could be implemented* using those techniques and networks," as "*Julia's disclosure suggests the combination.*" Appx30 (emphasis added).

- *Second,* the Board found that "*Julia discloses* that its technique *can be used* in a cable television network and that its remote server 108 can receive and process multiple user requests simultaneously; however, Julia does not describe how this would be accomplished." Appx33 (emphasis added).

- *Third,* the Board agreed with Comcast's expert that "Nazarathy and Quigley both describe multiplexing methods that *can be used* for supporting simultaneous requests, *as Julia suggests.*" Appx34 (quoting Appx3193-3195 ¶ 443) (emphasis added).

- *Fourth*, the Board found that "a person of ordinary skill in the art would have known that multiplexing and then demultiplexing *could be used* to combine and then separate (or 'partition') data associated with different users." Appx34 (citing Appx3018-3020 ¶¶ 87-88) (emphasis added).

In each of these four instances, the Board made findings with respect to a *POSITA's*

*knowledge about the prior art*—specifically, that Julia teaches techniques for a cable

television network and that the teaching of Nazarathy and Quigley fit directly with

Julia. The critical point, however, is that those observations did not exhaust the

analysis: While the Board first described a POSITA's knowledge of what "could be"

implemented or used, it "did not stop there," *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015); rather, the Board went on to offer a full explanation as to why a POSITA "*would have been motivated to combine*" the teachings of the prior art. Appx30-33.

As the Board explained, Julia itself teaches that for its system to be implemented on a cable network, it must be combined with "known" methods; and a POSITA seeking "to implement Julia would … naturally consider" Nazarathy and Quigley because they describe "well known" methods that "fit directly" into Julia. Appx31-34. In other words, it is the conjunction of Julia's express teachings and a POSITA's knowledge of "well known" techniques that established the motivation to combine. This central feature of the Board's motivation-to-combine analysis is indisputably a "would have" finding, not a "could have" speculation. Promptu's brief fails to grapple meaningfully with the ways in which "Julia's disclosure [itself] suggests the combination"—and it badly mischaracterizes the Board's underlying decision as a result.

Promptu misstates the Board's actual reasoning by stripping the Board's use of the words "can be" and "could be" entirely out of their proper context. Correspondingly, the authorities upon which Promptu relies are inapposite. In *Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987 (Fed. Cir. 2017), for example, the Board's conclusion rested exclusively on what "could be combined"

and "nowhere clearly explained, or cited evidence showing, *how* the combination of the two references was supposed to work." *Id.* at 993-94; *see also InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014) ("Dr. Yanco's testimony primarily consisted of conclusory references to her belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so."); *Ecolochem v. S. Cal. Edison Co.* 227 F.3d 1361, 1372 (Fed. Cir. 2000) ("The district court opinion does not discuss *any specific evidence* of motivation to combine, but only makes conclusory statements." (emphasis added)); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998) ("This court has identified three possible sources for a motivation to combine references: the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art. In this case, the Board relied upon none of these.").

This case is the opposite: The Board explained at length how the combination would work and why it would have been obvious to a POSITA to do so; the Board also credited Comcast's expert testimony on these subjects. Promptu's argument simply ignores the "full motive-to-combine analysis" that the Board actually performed below. *See, e.g.*, *In re Warsaw Orthopedic Inc.*, 832 F.3d 1327, 1333-34 (Fed. Cir. 2016) (rejecting patentee's argument that the Board relied only on "a belief that one of ordinary skill in the art *could* combine [the prior art]"); *PGS Geophysical*

*AS*, 891 F.3d at 1365 ("Our conclusion is not undermined by the fact that the Board concentrated much of its attention on what could be combined."); *Belden*, 805 F.3d at 1073-74 (similar). When the final written decision is considered in its entirety, as it must be, Promptu's principal argument on appeal finds no purchase.

### 2. The Board Did Not Reject All Arguments on What "Would Be" Combined.

Promptu claims repeatedly that "[t]he Board categorically rejected Comcast's arguments for why a skilled artisan would have been motivated to combine [the prior art] references." Br.2, 24, 26. That too is false.

Comcast presented multiple reasons that a POSITA would have combined Julia with Quigley or Nazarathy. First, as the Board explained, Comcast argued that "Julia's disclosure [itself] suggests the Combination"—that is, implementing Julia of a cable TV network, as Julia suggests, *requires* a secondary reference involving partitioning and that the teachings of Nazarathy and Quigley are two "well known" examples that "fit directly" into Julia's communication needs. Appx34-35. The Board credited the expert testimony Comcast presented in support of this reasoning and found motivation to combine on this basis. Appx31-32. Promptu has no response to this point, which is alone sufficient basis to affirm.

The Board's analysis could have ended there. But, in keeping with the rest of its thorough analysis, the Board chose to reach each of Comcast's alternative arguments for motivation to design as well. The Board went on to explain that, in

addition to the simple affirmative case for motivation that it had already embraced, Comcast had *also* argued that a POSITA would recognize that "[t]he Julia network would reap the benefits of Nazarathy (e.g., increased bandwidth) or Quigley (e.g., avoiding collisions between multiple upstream signals)," and that "[i]mplementing Julia's voice control system on the networks of Nazarathy or Quigley would improve the user interface for those systems." Appx36 (quoting Appx572 (Petition)). The Board declined to rely upon these arguments because, in its view, Comcast had "fail[ed] to adequately explain the relationship between the alleged benefits (i.e., Nazarathy's increased bandwidth and Quigley's avoiding collisions) and its proposed combination." Appx36.

That analysis shows the exact opposite of what Promptu contends. The Board did not "categorically reject[] Comcast's arguments" for motivation to combine, Br.2, but instead carefully scrutinized each of Comcast's theories in light of the record evidence. The Board accepted Comcast's main argument as supported by both the prior art and credible expert testimony and rejected its fallback arguments as unsupported. That shows a properly functioning fact-finder, not the caricature that Promptu paints on appeal.

### 3. The Board Did Not Justify Its Decision with Only "Aspirational Platitudes."

According to Promptu, the Board found a motivation to combine solely because the combination seemed "logical." Br.25. That too reflects a mischaracterization of the Board's actual analysis.

The word "logical" appears twice in the Board's discussion of motive to combine. Both times, the Board uses the term to describe its assessment of Mr. Schmandt's *substantive explanation* for the motivation to combine, not the combination itself. Mr. Schmandt explained that motivation to combine flowed from (1) the *express teachings* of Julia, and (2) the fact that Quigley and Nazarathy describe "well known" partitioning methods that "fit directly" into Julia's system. Appx34-35. The Board chose to "credit this testimony because *it is logical* and supported by the cited references and because there is no persuasive evidence to the contrary." Appx34 (emphasis added). By comparison, the Board rejected the testimony of Promptu's expert, Mr. Tinsman, because it "simply repeats [Promptu's] contention that the Petition is insufficient," without any "additional explanation" or "factual basis." Appx35. The Board was thus weighing carefully the competing expert testimony in light of the rest of the record evidence. It was entirely proper for the Board to credit the *substantive explanation* reflected in Comcast's expert testimony as "logical" en route to accepting it as additional support for the Board's

factual finding that a POSITA would have been motivated to combine the references at issue.[5]

*   *   *

In sum, the Board carefully considered the evidence and arguments offered by both parties and made the factual finding—based on a reasonable reading of the evidentiary record—that a POSITA would have been motivated to combine Julia with Nazarathy or Quigley. Appx30-35. That finding is amply supported by substantial evidence in the administrative record, and Promptu's appellate criticisms of the Board's decision miss the mark. The Board properly ruled that claims 1, 2, 4-6, 12, and 13 of the '196 patent are unpatentable as obvious over the cited prior art.

## III. Secondary Considerations of Non-Obviousness Are Insufficient

The Board found that Promptu failed to carry its burden of demonstrating a nexus, presumed or in fact, between the '196 patent and the alleged secondary considerations and therefore declined to place weight on the secondary considerations in its obviousness analysis. Appx42-49. The Board's factual findings with respect to nexus were correct, supported by far more than substantial evidence.

---

[5] Promptu's assertion that the Board "flip[ped]" the burden of proof (Br.26) is similarly misplaced. *See PGS Geophysical AS*, 891 F.3d at 1365 (Board's decision to accept petitioner's "simple affirmative case" and its explanation for "why [it] was rejecting [patentee's] arguments against motivation do[] not … reflect a shifting of the burden of persuasion").

**A.  Substantial Evidence Supports the Board's Finding that Promptu Failed to Prove Nexus.**

Secondary considerations play a role in the obviousness analysis only if they "have a 'nexus' to the claims"—that is, "there must be a legally and factually sufficient connection between the evidence [of objective indicia of non-obviousness] and the patented invention." *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) (citation and quotation marks omitted). "The patentee bears the burden of showing that a nexus exists" and can carry its burden in two ways. *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019). The patentee can claim a "presumption of nexus" if it "shows that [1] the asserted objective evidence is tied to a specific product and [2] that product 'embodies the claimed features, and [3] is coextensive with them.'" *Id.* (quoting *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018)). Alternatively, the patentee can demonstrate a nexus-in-fact if it can show that "the evidence of secondary considerations is the direct result of the unique characteristics of the claimed invention." *Id.* at 1373-74.

"Whether a patentee has established nexus [in fact or by presumption] is a question of fact." *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1277 (Fed. Cir. 2021). Here, the Board correctly determined that Promptu failed to demonstrate a presumption of nexus or nexus-in-fact between the patent and secondary considerations. Appx39-50.

### 1. Promptu Did Not Establish a Presumption of Nexus.

To invoke a presumption of nexus, Promptu had to prove that AgileTV "embodies the claimed features, and is coextensive with them." *Henny Penny*, 938 F.3d at 1332. The Board correctly identified multiple independent grounds on which Promptu failed to carry its burden.

*First*, Promptu failed to show that AgileTV "embodies the claimed features" because, as the Board explained, Promptu "provide[d] no explanatory argument or evidence" on how AgileTV actually embodied any of the claims at issue. Appx39. Indeed, Promptu "d[id] not [even] identify *which [of the two independent] claim[s]* is allegedly embodied in the AgileTV system." Appx39 (emphasis in original). Because Promptu declined to develop evidence or even the necessary arguments, the Board correctly concluded that Promptu failed to carry its burden. *See, e.g.*, *Bos. Sci. SciMed, Inc. v. Iancu*, 811 F. App'x 618, 627-28 (Fed. Cir. 2020) (a patentee "failed to establish a presumption of nexus" when it failed to "identify which aspect of the [invention] meets the claim element").

*Second*, the Board explained that Promptu had "fail[ed] to show that the AgileTV system is coextensive with claim 1" because, yet again, it "fail[ed] to address the degree of correspondence between its product and the patent claim[s]." Appx41. The Board rightly deemed this omission "independently fatal to

[Promptu's] contention that nexus should be presumed." Appx41 (citing *Fox Factory*, 944 F.3d at 1374).

Promptu does not engage directly with either of these independent bases for affirmance on appeal. Promptu does not identify any place in the record where it identified for the Board which claim is embodied in the AgileTV system or that AgileTV is coextensive with any such claim. In the absence of such evidence there is no basis for disturbing the Board's conclusion that Promptu had not established the prerequisites to a nexus presumption.

On appeal, as before the Board, Promptu's nexus theory is threadbare and conclusory: It claims to have "showed [below] how AgileTV embodies the invention disclosed and claimed in the '196 patent." Br.29 (citing Appx791-801). But Promptu devoted barely a paragraph (Appx792-793) to the issue in its Response before the Board, and that paragraph does nothing more than recite a list of instances in which the patent specification mentions AgileTV. The Board thus agreed with Comcast's argument that Promptu "cite[d] no evidence describing its actual commercial product. It merely argues in a circle that the product embodied the patent because the patent allegedly describes the product." Appx41 (quoting Appx880-881).

Instead of grappling with its own failures of proof, Promptu insists that Comcast "never seriously disputed whether AgileTV embodied the claims of the '196 patent." Br.35. The record proves otherwise. Comcast explained clearly to the

Board that, even though Promptu bore the burden of proof, Promptu had "cite[d] no evidence describing its actual commercial product" and relied on nothing more than "a conclusory declaration by its former CTO" Dr. Chaiken, which "makes no attempt to show that the AgileTV product embodied and was 'coextensive' with the challenged claims." Appx880-881. Promptu failed to carry its burden on the presumption of nexus.

### 2. Promptu Did Not Show a Direct Nexus to Unique Characteristics of the Claimed Invention

A patentee can also prove nexus by showing "the evidence of secondary considerations is the *direct result of the unique characteristics of the claimed invention.*" *Fox Factory*, 944 F.3d at 1373-74 (cleaned up). That requirement means that the "identified objective indicia must be directed to what was not known in the prior art." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1331 (Fed. Cir. 2017). For each of Promptu's secondary considerations, the Board determined that Promptu failed to prove a direct nexus. Appx42-49. Substantial evidence supports those determinations.

### a. Long-Felt but Unmet Need

Promptu argued before the Board that there was "a long-felt but unmet need for using voice recognition in cable systems." Appx44 (quoting Appx795-796). The Board disagreed. It found "no nexus between Patent Owner's evidence of long-felt need and the challenged claims" because, "[a]t most," Promptu had shown "a

connection between its evidence and the general concept of voice recognition in cable systems"—a concept "neither novel nor required by the claims." Appx44-45. The Board explained that this concept was not novel because Julia expressly disclosed "voice recognition processing for multiple users in a network supporting video or cable television delivery." Appx43-44 (citing Julia at Appx2635-2637, 1:30-43, 2:13-25, 3:61-4:35, 6:12-26); *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1034-35 (Fed. Cir. 2016) (affirming finding of no nexus where patentee "only pointed to … a long-felt need for staples of different heights (*a feature in the prior art*), not the combination of features that is the invention here" (emphasis added)). Promptu does not dispute that finding on appeal, and it provides an independent basis to affirm the Board's long-felt-need finding.[6]

---

[6] In addition, the Board offered two alternative grounds on which to reject Promptu's purported evidence of long-felt need. First, with respect to the claim requirements, the Board found that "[t]he challenged claims do not require voice recognition *in cable systems*: they encompass speech recognition in any *video delivery* network." Appx43 (emphasis in original). Second, the Board doubted that Promptu could show "any alleged need was [actually] long-felt": the alleged need arose "[a]s early as 2000," the '196 patent claimed priority as of June 2000, and the Board "was [simply] not persuaded that a need allegedly recognized by one company for no more than a few months qualifies as a long-felt need." Appx45 n.15. These findings provide additional independent bases on which to affirm, but neither is necessary to the Board's conclusion.

### b.     Industry Praise

The Board next found that Promptu failed to show nexus because it "fails to show any connection between the alleged praise of the AgileTV system and the claimed invention." Appx45. Specifically, the Board found that "AgileTV received attention for a feature that is not recited in the challenged claims—namely, voice recognition technology." Appx45.

Reviewing each of Promptu's exhibits, the Board explained that every piece of industry praise concerned the technology and means by which AgileTV performed voice recognition. Appx45. For example, AgileTV received praise for its "extensive, dynamically managed database of more than 100,000 phrases," "accuracy," and "intuitive commands." Appx46. But as the Board correctly discerned, *the claims at issue here do not require any new and particular "voice recognition technology*." Appx45-46. Instead, the '196 patent claims a means to implement off-the-shelf voice recognition technology over a cable network. *See* Appx160 (claim 1 reciting "create an identified speech content response" without limitation as to how). And, as the Board rightly found, if the voice recognition implemented on such a cable network received praise for its accuracy, it did so for reasons entirely unrelated to and not recited in the claims. *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 847 F. App'x 881, 888-89 (Fed. Cir. 2021) (finding no nexus

based on industry praise when evidence "do[es] not meaningfully tie the benefits to the claim limitations").

Indeed, as the Board further explained, prior art such as Julia specifically disclosed the use of speech recognition at the level of generality recited in the claims. Appx46. For example, Julia claims "voice recognition with intuitive commands such as 'show me movies starring John Wayne'." Appx46 (quoting Appx2604 (Julia), 14:9-28); *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220 (Fed. Cir. 2016) ("A nexus may not exist where, for example, the merits of the claimed invention were 'readily available in the prior art.'"). Hence, the lone feature of AgileTV that received industry praise was both present in the prior art *and* absent from the challenged claims.[7]

### c.    Commercial Success

Promptu claimed before the Board that AgileTV was commercially successful because "millions of dollars" were invested. Appx46 (quoting Appx799-800 (Patent Owner Response)). The Board refused to place weight on that evidence because

---

[7]    Contrary to Promptu's insistence, the Board was not suggesting that the patent does not even "involve speech recognition." Br.41. The relevant point is that the claims at issue are not directed to any particular manner of voice-recognition processing—*i.e.*, the claims do not limit the kinds of voice recognition technology that must be used, and concern only the general concept of speech recognition at a level of generality encompassed by the prior art. Promptu ignores both of these points.

Promptu "fail[ed] to tie any of this evidence to the challenged claims, and thus, fails to show nexus." Appx45. For example, Promptu asserted below in its Patent Owner Response that investment "was a direct result of the success of its AgileTV system for providing voice recognition processing to multiple users … using an architecture including the claimed invention." Appx800. But, critically, Promptu offered no *actual evidence* to support that contention. Appx800. Hence, "the record is completely silent on whether the commercial success was caused by the subject matter of the … patent as distinct from the prior art,'" which specifically discloses voice recognition on a cable network. *In re Cree, Inc.*, 818 F.3d 694, 703-04 (Fed. Cir. 2016). The Board correctly found that Promptu failed to carry its burden of showing direct nexus.[8]

### d.    Prior Licensing

Promptu argued before the Board that the challenged claims were non-obvious because Comcast entered into a "License and Development Agreement" (LDA), which licensed a number of AgileTV patents, including an application that

---

[8]    Promptu contends that the Board erred by rejecting Promptu's evidence of commercial success "due to the lack of market share evidence," even though such evidence is "unnecessary to establish nexus." Br.45. That is a mischaracterization. The Board found that Promptu failed to show nexus for the reasons discussed above then *additionally* found that Promptu "fails to show that the AgileTV system itself was commercially successful," even if "the company had investors." Appx46 n.16 (internal citations omitted). For this additional, independent reason, the Board's findings regarding commercial success are supported by substantial evidence.

later issued as the '196 patent. Appx800-801. The Board found that "the LDA alone does not establish a legally or factually sufficient nexus with the '196 patent." Appx47.

In support of its conclusion, the Board explained that (1) the license "included all [twenty-one] patents [and applications] owned or licensable by Patent Owner at the time," (2) it was "provided for no consideration," and (3) it was for "limited purposes" of "evaluat[ing] the AgileTV system for possible deployment." Appx47. Promptu fails to contest any of these facts on appeal, and they cast substantial doubt over whether the "license[] w[as] based on the merits of the '1[96] patent." *In re Cree*, 818 F.3d at 703. Hence, substantial evidence supports the Board's factual determination that Promptu failed to show a nexus between the LDA and the claims at issue.[9]

### e. Copying

Promptu argued before the Board that the challenged claims are non-obvious because Comcast allegedly copied the invention in its X1 product. Appx801-802

---

[9] Promptu claims the Board "erred when it downplayed Comcast's license to the '196 patent merely because the license included other patents." Br.46. That is another mischaracterization: The Board's decision was based on *both* the scope of license *and* its purpose. Furthermore, the inclusion of other patents in a license is a valid consideration in determining whether a patentee has established a nexus between the license and the challenged claims. *See In re Cree,* 818 F.3d at 703-04.

(Patent Owner Response). The Board found that Promptu "fails to show that Petitioner's X1 System meets the limitations of any challenged claim." Appx49.

The Board considered and properly rejected Promptu's alleged evidence of copying. The Board explained that Promptu relied on "preliminary infringement contentions" and an instructional video, but "provide[d] no explanation of the contents or significance of these exhibits." Appx48. The Board properly rejected Promptu's attempt to incorporate by reference the contents of those documents in violation of 37 C.F.R. § 42.6(a)(3). *Id.* Promptu also relied on a statement in Dr. Chaiken's declaration that "acquaintances of mine who were aware of the scope of my work at AgileTV told me they confused Comcast's functionality with the AgileTV solution." Appx48 (quoting Appx5235 ¶ 34). But the Board properly rejected that statement as hearsay. Appx48-49; *see also* Fed. R. Evid. 802; 37 C.F.R. § 42.62(a) (incorporating Federal Rules of Evidence). Promptu's brief does not address any of the Board's findings with respect to copying, and all are supported by substantial evidence.

## B. Promptu's Critiques of the Final Written Decision Are Misplaced.

Promptu raises a battery of complaints about the Board's factual findings with respect to nexus. None is colorable, let alone sufficient to defeat the deferential substantial evidence standard.

### 1.    The Board Did Not Err in Addressing Presumed Nexus

Promptu cannot answer the Board's core findings that Promptu (1) never even tried to "identify *which claim* is allegedly embodied in the AgileTV system," (2) "provide[d] no explanatory argument or evidence" on how AgileTV embodied any such claim, and (3) "fail[ed] to address the degree of correspondence between its product and the patent claim[s]." Appx39; Appx41. Promptu instead levels ancillary objections to various statements in the Board's analysis on the presumption of nexus; but none is sufficient to cure the underlying failure of proof.

Promptu first complains that the Board dismissed Dr. Chaiken's declaration as "conclusory." Br.33-35. But the Board's explanation for doing so was well supported by substantial evidence. The Board began by identifying the single sentence from Dr. Chaiken's declaration that parroted language from the patent claims:

> By 2003, AgileTV implemented the above-described architecture [i.e., "Server-Centric Voice Recognition"] to partition a received back channel to a multiplicity of received identified speech channels, process those to create a multiplicity of identified speech content, and responding to the multiplicity of identified speech content to create a unique identified speech content response for each identified speech content.

Appx40 (quoting Appx794-795). The Board declined to place any weight on this sentence because, as the Board explained, *Promptu itself* "does not appear to rely on this sentence to show that the AgileTV embodied the claims (and does not reference

claim 1)." Appx40. Because Promptu had the burden of proof, but failed to even try to connect the dots, the Board was correct not to credit the snippet from Dr. Chaiken.

The Board's analysis could have ended there. But the Board went on to explain that, "even if [Promptu] had" attempted to rely on the above sentence as embodying claim, the Board "would still find this lone sentence to be insufficient" because Promptu had "fail[ed] to provide analysis or evidence to support the statements that arguably correspond to the limitations of claim 1." Appx40. That was correct: Dr. Chaiken's snippet fails to identify *which claim* the product allegedly embodies, describe in any detail the component parts of the product, or demonstrate co-extensiveness by mapping each of those parts onto the patent. Considering the lack of "documentary evidence or explanation," the Board correctly "afford[ed] little weight" to a conclusory declaration that merely parroted the claim language without explaining *how* the AgileTV embodies a particular claim. Appx40.

Promptu now suggests that Dr. Chaiken's parroting of the patent is actually a *virtue* that somehow makes his declaration "indispensable." Br.34. Promptu also tallies up the instances in which the '196 patent specification mentions the AgileTV by name, insinuating that it must therefore embody a claim. *Id.* But both contentions are non-responsive to the Board's core observation that Promptu failed to identify *which claim* the product allegedly embodies.

Promptu also claims that the Board mischaracterized Dr. Chaiken as an expert witness, rather than a fact witness. Br.35. That is incorrect and irrelevant. The Board never called Dr. Chaiken an expert and did not discount his testimony *because he was an expert*. Appx40-41. Instead, the Board explained that it was dismissing the statements in his declaration *because they were conclusory* and, for the reasons described above, insufficient to establish embodiment or coextension. Though the Board cited 37 C.F.R. § 42.65, the rule governing conclusory expert testimony, it did so merely to illustrate the proposition that "conclusory statements in … affidavits are entitled to little weight," regardless of whether they are proffered by an expert or a layperson. *E.g.*, *In re Soni*, 54 F.3d 746, 753 (Fed. Cir. 1995); Appx40-41.

Promptu also faults the Board for straying beyond the briefing to point out the "important, unclaimed features" contained in AgileTV. Br.30-32. But that additional observation was unnecessary to the Board's core holding that Promptu had "fail[ed] to address the degree of correspondence between its product and the patent claim[s]." Appx41. And Promptu misreads the Board's observation in any event. The Board's objective was not to introduce new independent grounds for its decision, but instead to underscore a likely explanation as to *why* Promptu failed to make even a meaningful effort to satisfy its burden to show coextensiveness: The product was never even arguably coextensive with the patent. Appx41. Even Dr. Chaiken "acknowledge[s] that the AgileTV system changed over time," but never

"address[ed] the substance or timing of those changes" or explained *how* the AgileTV could possibly *remain coextensive* with the patent in light of all the updating. *Cf. Lectrosonics, Inc. v. Zaxcom, Inc.*, IPR2018-01129, Paper No. 33 at 61 (P.T.A.B. Jan. 24, 2020) (designated as precedential) ("consider[ing the] issue of nexus anew" "[i]n light of the different scope of proposed substitute claims"). The Board can hardly be faulted for considering *why* Promptu made no meaningful effort to develop evidence of embodiment or coextension.

## 2. The Board Did Not Err in Addressing Direct Nexus

Promptu contends that the Board erred by discounting certain evidence of direct nexus under an allegedly improper claim construction and legal framework. Br.36-37. These critiques, which go only to ancillary aspects of the Board's decision, lack merit and would not establish prejudice in any event.

### a. Claim Construction

Promptu contends that the Board improperly construed the following language from claim 1 of the '196 patent: "a network supporting at least one of cable television delivery and video delivery." Br.37-39. According to Promptu, the Board construed this phrase to require support for cable television delivery *or* video delivery, when in fact the claim requires both. *Id.* Promptu's argument is irrelevant and wrong.

*First*, the Board applied the challenged construction just once, in its analysis of long-felt need, and only to support a conclusion that is independently justified by other, uncontested rationales. Appx43-44; *see* note 6 and accompanying text, *supra*. Although Promptu insists that "[t]he Board used its faulty construction to presumptively ignore *all* evidence relating to voice recognition in cable systems," Br.39, the Board gave *multiple independent reasons* for discounting direct evidence of nexus based solely on the element of "voice recognition in cable systems"— including the fact that "the general concept of voice recognition processing for multiple users in a network supporting video or cable television delivery was expressly disclosed in the prior art." Appx43-44. Promptu's claim construction argument is therefore irrelevant to the disposition of this appeal.

*Second*, and in any event, the Board's construction is correct because it reflects the "broadest reasonable interpretation" of the claim. Appx13. The Board's construction would encompass networks that support "cable television delivery" and/or "video delivery"; Promptu's narrower reading would require both. There is no disclosure in the specification that compels Promptu's narrower reading. To the contrary, the title of the patent is "System and Method of Voice Recognition near a Wireline Node of a Network Supporting Cable Television **and/or** Video Delivery," Appx97 (emphasis added); the Abstract recites "a network supporting cable television **and/or** video delivery," *id.* (emphasis added); and the specification is

replete with examples of the invention comprising a network supporting cable television **and/or** video delivery, *e.g.*, Appx135, 1:29 (and/or), 1:64-65 (or), 2:1 (or), 2:4 (and/or); Appx136, 4:63-65 (and/or); Appx137, 5:9 (and/or); Appx145, 22:50-51 (and/or). Only the Board's broader construction "comports with the instrument as a whole." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996).

Contrary to Promptu's submission (Br.37), no "longstanding Federal Circuit principles" preclude the Board's construction. Instead, context is king. The conjunctive construction was appropriate in a case like *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 n.9 (Fed. Cir. 2004), because the claim terms there "each consist[ed] of more than one value, i.e., 'a desired program start time' comprises many possible start times." Since *SuperGuide*, courts and the Board have routinely and correctly construed "at least one of *A* and *B*" disjunctively for a variety of case- and patent-specific reasons. *E.g.*, *Shotkam LLC v. Tachyon, Inc.*, No. CV H-20-1070, 2021 WL 23311, at *5-6 (S.D. Tex. Jan. 4, 2021) (collecting cases); *Rex Med., L.P. v. Intuitive Surgical, Inc.*, No. CV 19-005 (MN), 2020 WL 2128795, at *6 (D. Del. May 5, 2020) ("Where there are only two items, courts have understood the use of "and" to operate as a shorthand for "[A] or [B] or [A and B]."). In a case like this one, where "the items that follow 'at least one of' … [are] individual parameters having only one value" instead of "categories that may have multiple values," the disjunctive construction is not merely reasonable, but

*compelled* by the plain language. *Apple, Inc. v. Evolved Wireless LLC*, No. IPR2016-01177, 2017 WL 6543970, at *4 (P.T.A.B. Dec. 20, 2017).[10]

### b. Nexus Standard

Promptu claims the Board applied an incorrect legal standard, under which evidence of nexus must relate to a "novel feature." Br.42-45. That is false. The Board correctly explained that secondary considerations must be the "direct result of the unique characteristics of the claimed invention." Appx42; *Fox Factory*, 944 F.3d at 1373-74 (same); *see also Novartis AG*, 853 F.3d at 1331 ("[T]he identified objective indicia must be directed to what was not known in the prior art."); *ClassCo.*, 838 F.3d at 1220 (same). Indeed, that is precisely what the nexus requirement is for. The Board concluded that any industry praise that AgileTV received flowed from its ability to implement off-the-shelf voice recognition technology over a cable network, a teaching "expressly disclosed in the prior art." Appx43-44.

Promptu's reliance on *Chemours Co. v. Daikin Industries*, 4 F.4th 1370 (Fed. Cir. 2021), and *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016), is

---

[10] Promptu claims the Board's construction was inappropriate because it was introduced for the first time in its final written decision. Br.39-40. The Board is "free to do" so as long as it does not "chang[e] theories midstream." *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016), *rev'd on other grounds*, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018); *Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263 (Fed. Cir. 2021) (same). Promptu does not even try to identify any change in theories.

misplaced. Br.42-43. *Chemours* clarified that "the separate disclosure of individual limitations, where the invention is a unique combination of three interdependent properties, does not negate a nexus." 4 F.4th at 1378. Here, the Board found that Promptu's evidence of secondary considerations, including industry praise, was tied only to elements disclosed by *a single prior art reference*. *E.g.*, Appx43-44 (citing Julia). *WBIP* stated that "the patent owner can show that it is the claimed combination as a whole that serves as a nexus for the objective evidence." 829 F.3d at 1330. Here, as the Board explained, Promptu "fail[ed] to provide any argument or evidence to demonstrate a nexus between the evidence and the claimed combination as a whole," and "at most" showed a nexus to elements disclosed in the prior art. Appx44 & n.14.[11]

Promptu contends that in a parallel proceeding "the Board found that Promptu's evidence established a long-felt need for 'providing voice recognition processing for multiple users.'" Br.44. That is simply not true. In IPR2018-00343, the Board stated that "*[t]o the extent Patent Owner regards* providing voice recognition processing for multiple users as a long-felt but unsolved need, none of

---

[11] On appeal, Promptu contends that its evidence tied praise of AgileTV to the claimed combination as a whole, as it discussed reduced latency. Br.43 (citing Appx4991). This argument is meritless—the cited reference discusses neither AgileTV nor the claimed combination—and was never raised below. *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1360, 1364 (Fed. Cir. 2020).

the challenged claims require [such] a system for multiple users." *Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, IPR2018-00343, Paper No. 56, at 50 (P.T.A.B. July 18, 2019) (emphasis added). The Board did not adopt Promptu's argument regarding an alleged long-felt need, but instead criticized Promptu's evidence of secondary considerations as "weak." *Id.* at 43.

\* \* \*

In sum, the Board carefully considered the arguments and evidence offered by Promptu and made factual findings that Promptu failed to meet its burden to show nexus, either presumed or direct, for each alleged secondary consideration. These findings are amply supported by substantial evidence in the administrative record. Promptu's appellate criticisms rely on misstatements of the law and mischaracterizations of the final written decision. The Board correctly ruled that the claims at issue are unpatentable as obvious.

## CONCLUSION

For the foregoing reasons, the Court should affirm the final written decision of the Board finding claims 1, 2, 4-6, 12, and 13 of the '196 patent unpatentable.

Dated: June 10, 2022

Respectfully submitted,

*/s/ Mark A. Perry*

James L. Day, Jr.
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, Suite 3301
New York, New York 10153
(212) 310-8000

Mark A. Perry
 *Principal Attorney*
Joshua Halpern
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com

*Counsel for Appellee Comcast Cable Communications, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2022, I served a copy of the foregoing brief

on all counsel of record via the CM/ECF system.


Dated: June 10, 2022

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because it contains 13,456 words, excluding the parts of the brief exempted by Federal Circuit Rule 32(b)(2) and Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a monospaced typeface using Microsoft Word 2019 in 14-point Times New Roman font.

Dated: June 10, 2022

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com