**2022-1093**

IN THE

# United States Court of Appeals for the Federal Circuit

PROMPTU SYSTEMS CORPORATION,

*Appellant*,

v.

COMCAST CABLE COMMUNICATIONS, LLC,

*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2018-00344

**REPLY BRIEF FOR APPELLANT PROMPTU SYSTEMS CORPORATION**

Jacob A. Schroeder
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

Joseph M. Schaffner
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

Joshua L. Goldberg
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

*Counsel for Appellant*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

## CERTIFICATE OF INTEREST

**Case Numbers** 2022-1093

**Short Case Caption** Promptu Systems Corporation v. Comcast Cable Communications, LLC

**Filing Party/Entity** Promptu Systems Corporation

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: August 1, 2022 Signature: */s/ Jacob A. Schroeder*

Name: Jacob A. Schroeder

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☒ None/Not Applicable |
| Promptu Systems Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Cory C. Bell<br>Daniel Klodowski<br><br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | John S. Ferrell<br>Wade C. Yamazaki<br><br>Carr & Ferrell LLP | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| *Promptu Sys. Corp. v. Comcast Corp.*, No. 22-1939 (Fed. Cir.) | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT .......... 1
II. ARGUMENT .......... 2
A. Comcast's response confirms that the Board relied on legally insufficient grounds to combine references .......... 2
1. None of Comcast's grounds for affirmance withstand scrutiny .......... 3
a. Julia's so-called "omitted details" do not disclose or suggest "partitioning" a back channel .......... 3
b. Nothing in Julia "requires" it to partition speech channels .......... 5
c. Comcast's invocation of "well known" techniques uses hindsight and makes obviousness analyses trivial .......... 6
2. Comcast fails to address Promptu's arguments and authority .......... 8
B. The Board improperly disregarded Promptu's secondary consideration evidence .......... 11
1. The Board erred in rejecting Promptu's evidence for a presumed nexus .......... 11
a. Promptu's secondary consideration evidence bears directly on claim 1 of the '196 patent .......... 12
b. Comcast cannot justify the Board's summary disregard of Dr. Chaiken's testimony .......... 14
2. The Board erred in rejecting Promptu's direct evidence of a nexus .......... 17
a. Long-felt need .......... 18
b. Industry praise .......... 23
c. Commercial success and Comcast's license .......... 25

C. Comcast's request for remand based on Murdock is forfeited and improper ....................28

III. CONCLUSION....................29

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
949 F.3d 1360 (Fed. Cir. 2020) ....................5, 6

*Atofina v. Great Lakes Chem. Corp.*,
441 F.3d 991 (Fed. Cir. 2006) ....................4

*Cantrell v. Wallick*,
117 U.S. 689 (1886) ....................7

*Chemours Co. v. Daikin Indus.*,
4 F.4th 1370 (Fed. Cir. 2021) ....................*passim*

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
838 F. App'x 551 (Fed. Cir. 2021) ....................12

*In re Cree*,
818 F.3d 694 (Fed. Cir. 2016) ....................27

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
227 F.3d 1361 (Fed. Cir. 2000) ....................16

*Ford Motor Co. v. United States*,
926 F.3d 741 (Fed. Cir. 2019) ....................22

*Fromson v. Advance Offset Plate, Inc.*,
755 F.2d 1549 (Fed. Cir. 1985) ....................7

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
110 F.3d 1573 (Fed. Cir. 1999) ....................23

*Holmwood v. Sugavanam*,
948 F.2d 1236 (Fed. Cir. 1991) ....................15

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
930 F.3d 1325 (Fed. Cir. 2019) ....................4

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) ....................2, 5, 11

*In re IPR Licensing, Inc.*,
942 F.3d 1363 (Fed. Cir. 2019) ....................16

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
106 F.3d 1563 (Fed. Cir. 1997) ....................11

*KSR Int'l v. Teleflex Inc.*,
550 U.S. 398 (2007) ....................6

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ....................9

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) ....................13

*In re Magnum Oil Tools Int'l*,
829 F.3d 1364 (Fed. Cir. 2016) ....................8, 16

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ....................28

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012) ....................23, 26

*Monsanto Co. v. Scruggs*,
459 F.3d 1328 (Fed. Cir. 2006) ....................28

*In re Nuvasive*,
842 F.3d 1376 (Fed. Cir. 2016) ....................9

*Pers. Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ....................2, 6, 8

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) ....................10

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
815 F.3d 747 (Fed. Cir. 2016) ....................22

*Qualcomm Inc. v. Intel Corp.*,
6 F.4th 1256 (Fed. Cir. 2021) ....................21

*Quanergy Sys. v. Velodyn Lidar USA, Inc.*,
24 F.4th 1406 (Fed. Cir. 2022) ....................................................................16, 17

*Rambus Inc. v. Rea*,
731 F.3d 1248 (Fed. Cir. 2013) ....................................................................19, 28

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
727 F.2d 1540 (Fed. Cir. 1984) ..........................................................................7

*SAS Inst., Inc. v. ComplementSoft, LLC*,
825 F.3d 1341 (Fed. Cir. 2016) ........................................................................20

*Shoes by Firebug LLC v. Stride Ride Children's Grp., LLC*,
962 F.3d 1362 (Fed. Cir. 2020) ........................................................................27

*SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech.*,
983 F.3d 1367 (Fed. Cir. 2021) ........................................................................21

*In re Soni*,
54 F.3d 746 (Fed. Cir. 1995) ............................................................................15

*In re Suitco Surface, Inc.*,
603 F.3d 1255 (Fed. Cir. 2010) ........................................................................22

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
358 F.3d 870 (Fed. Cir. 2004) ..........................................................................21

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ........................................................................19

*TQ Delta, LLC v. Cisco Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) ..............................................................3, 5, 8, 11

*Transocean Offshore Deepwater Drilling USA, Inc. v. Maersk Drilling USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012) ........................................................................20

*In re Van Os*,
844 F.3d 1359 (Fed. Cir. 2017) ..........................................................................8

*Vicor Corp. v. SynQor, Inc.*,
869 F.3d 1309 (Fed. Cir. 2017) ........................................................................25

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) ........................................................................10

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ...................................................................*passim*

*Zavaleta-Policiano v. Sessions*,
873 F.3d 241 (4th Cir. 2017) .........................................................................15

## I. PRELIMINARY STATEMENT

All inventions appear obvious through the lens of hindsight. To safeguard against hindsight bias, the law requires a motivation for why an ordinary artisan would have combined references. This analysis must be express, identify the proposed motivation, substantiate it with evidence, and proceed without using the challenged patent as a roadmap.

In this case, the Board's obviousness analysis fell short of this charge. After rejecting every motivation Comcast offered for why an artisan "would have" combined the references, the Board found a motivation simply because they "could be" combined. As this Court has explained, such a rationale is "not enough" to support an obviousness finding.

Comcast's response exposes the hindsight of its analysis. It relies on a generic result in one reference and combines it with another because Promptu's patent suggests the idea. Comcast has no justification for the combination apart from the truisms that it "can be" done and that the added features were "well known." This is no motivation at all. All inventions improve upon what came before them, and combining references merely because it "can be" done conflates what is obvious with what is possible. Every federal appellate court has rejected this formulation of obviousness. This Court should do so again.

This superficial reasoning similarly pervades the Board's treatment of Promptu's objective indicia of nonobviousness. Despite unrebutted evidence establishing that Comcast licensed the patented technology, effusively praised it, and implemented it within its cable network, the Board disregarded the evidence. It did so by relying on theories no party espoused, using claim constructions Comcast does not defend, with factual findings not supported by the undisputed record. Such results-driven reasoning is not substantial evidence.

This Court should reverse for two independent reasons. It should reverse because the Board failed to provide a sufficient basis for combining references. And it should reverse for the Board's failure to give due weight to the unrebutted objective indicia of nonobviousness.

## II. ARGUMENT

### A. Comcast's response confirms that the Board relied on legally insufficient grounds to combine references

Promptu's opening brief explained how the Board's obviousness ruling relied on an insufficient motivation to combine. BB21-28. Specifically, the Board combined Julia with Nazarathy and Quigley based on what merely "could be" or "can be" done, rather than what "would" have been obvious to do. *Id.* This reasoning cannot support an obviousness finding. *See Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1337 (Fed. Cir. 2016); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327,

1352 (Fed. Cir. 2014); BB21-28. For this reason alone, the Court should reverse. *E.g.*, *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1359-61 (Fed. Cir. 2019).

### 1. None of Comcast's grounds for affirmance withstand scrutiny

Comcast presents three reasons for affirming the Board, but none of them have merit. One contradicts the record, another reflects a new factual contention never endorsed by the Board, and the other confirms Promptu's case. For the reasons below and in Promptu's principal brief, this Court should reverse the Board's judgment. *See* BB21-28.

#### a. Julia's so-called "omitted details" do not disclose or suggest "partitioning" a back channel

Comcast first argues that Julia itself suggests the claimed "partitioning" step but "omit[s] details [] 'known' in the field." *E.g.*, RB32-35. To support this argument, Comcast cites a single passage of Julia stating that it was "known" for servers to "support access requests from simultaneous multiple network users." *See* RB33 (citing Appx2600, 6:12-26); RB34 (same); RB1; RB10-11; RB21. The Board relied on this passage in its decision. Appx29; Appx32.

But merely supporting requests from multiple network users does not require or suggest the claimed partitioning step. As explained in the '196 patent, traditional cable architectures handled "simultaneous transmissions from different set-top boxes" without the claimed partitioning. Appx136, 3:4-41. This "static" architecture

did not provide sufficient bandwidth to carry voice data from multiple users over the back channel. Appx135-136, 2:67-3:3, 3:38-41.

Julia does not suggest anything beyond this static architecture. *See* Appx1585-1589. That Julia's server processes data from multiple users does not suggest "partitioning [a] received back channel." Appx160, 51:3-4; *see also* Appx2600, 6:16-26; Appx2599, 4:4-9; Appx136, 3:4-41. Indeed, Comcast admitted how Julia by itself does ***not*** suggest the claimed partitioning step. *See* Appx1366, 22:9-14 (explaining how Nazarathy and Quigley are required for the partitioning element); Appx556-557 (relying on Nazarathy and Quigley for this element); Appx1585-1586.

Comcast's expert confirmed this point. In his declaration, he explained how partitioning is just "***one way***" among others to support multiple users. Appx3133 ¶ 315 (emphasis added). "[Q]ueuing" is another. Appx3132-3133 ¶ 314 (citing Appx2600, 6:12-26). Comcast never argued—and the Board never held—that partitioning is the ***only*** or even principal way of handling requests from multiple users. Appx3133 ¶ 315; Appx32. Disclosing a generic result does not disclose every possible way of achieving that result. *E.g.*, *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006); *see also Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1345 (Fed. Cir. 2019).

This distinction lays bare the hindsight of Comcast's argument. Julia vaguely discloses processing requests from multiple users, and its expert fixated on "one

way" of doing so from Nazarathy and Quigley. Appx3133 ¶ 315. But the reason why he selected this ***specific*** way is because he used the '196 claims as a roadmap. This is improper, as it fails to supply a motivation for why an artisan would have turned to Nazarathy or Quigley in the first place. *See InTouch*, 751 F.3d at 1351-52; *see also TQ Delta*, 942 F.3d at 1359-61. Neither Comcast nor the Board showed why an ordinary artisan in possession of Julia would have "plucked" this solution "out of the sea" of other possibilities without *a priori* knowledge of the '196 patent or its claims. *WBIP*, 829 F.3d at 1337. Such hindsight-driven reasoning does not withstand substantial evidence review. *Id.*; *see also InTouch*, 751 F.3d at 1351-52.

Nothing else in Julia changes this analysis. Julia's description of "queuing and multi-tasking of requests" merely discusses ways of processing data that has already been received. Appx2600, 6:16-26. This statement again just describes how the data is ***processed at*** a speech engine, not whether it was ever ***partitioned***. *Id.* Julia's reference to queueing and multi-tasking thus fails to cure the above problems.

**b. Nothing in Julia "requires" it to partition speech channels**

Comcast next urges that Julia "*requires*" partitioning speech channels. RB35; RB40. This argument is flawed.

As a threshold matter, Comcast never raised this argument to the Board. This forfeits the argument for appeal. *E.g.*, *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1360, 1364 (Fed. Cir. 2020).

In fact, Comcast took the opposite position at the Board that it advances today. Comcast's petition never raised a single-reference obviousness ground based on Julia. Appx514-515. Comcast acknowledged at oral hearing that Julia does not teach partitioning. *See* Appx1355-1356, 11:15-12:20; Appx1366, 22:9-14; Appx1585-1586. Instead, Comcast relied on Nazarathy and Quigley for the "partitioning" step and disputed only whether the "back channel" and "received back channel" could be mapped to the same element. *See* Appx556-558; Appx872-873; Appx1561-1562. Comcast never argued that Julia "required" partitioning speech channels, and the Board never made this finding. Appx32-36.

The Court should not consider Comcast's forfeited argument conflicting with the positions it took at the Board. *E.g.*, *Acoustic Tech.*, 949 F.3d at 1364.

**c. Comcast's invocation of "well known" techniques uses hindsight and makes obviousness analyses trivial**

Finally, Comcast falls back on the assertion that partitioning was "well known." *E.g.*, RB32, 34-35, 38, 40, 42. This proves Promptu's case. Rather than provide a ***motivation*** to combine Julia with Nazarathy and Quigley, Comcast combines them merely because doing so is ***possible*** among other options. *Id.*; Appx34-35. As Promptu's opening brief explained, this is not a proper obviousness analysis. BB27.

All inventions rest to some degree on known elements. *Personal Web*, 848 F.3d at 991-92 (quoting *KSR Int'l v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007)).

Inventions may thus lie in a combination of known features. *Chemours Co. v. Daikin Indus.*, 4 F.4th 1370, 1377-78 (Fed. Cir. 2021); *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546 (Fed. Cir. 1984); *Cantrell v. Wallick*, 117 U.S. 689, 694 (1886). "Only God works from nothing. Men must work with old elements." *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 & n.3 (Fed. Cir. 1985). To combine references, a challenger must supply a ***motivation*** to "pluck [that] reference out of the sea of prior art" without the benefit of hindsight. *WBIP*, 829 F.3d at 1337.

Comcast's reliance on the "well known" nature of partitioning lacks this motivation. Nothing in Julia suggests "partitioning" speech channels to handle multiple users (*see* Section II.A.1.a, *supra*), and thus nothing would motivate an ordinary artisan to turn to Nazarathy or Quigley. Comcast's expert admits this would just be "one way" handling requests among other options. Appx3133 ¶ 315. And as the '196 patent explains, "static" cable network architectures handled simultaneous requests without partitioning. Appx135-136, 2:67-3:41. Combining Julia with Nazarathy or Quigley merely because partitioning was "known," as Comcast does, amounts to an attempt to hold claims invalid because they rely on old elements. This is not the test. *See supra* (citing cases). And this suggestion is especially unfounded here because the Board rejected every substantive motivation Comcast proffered at trial. Appx36. Comcast does not try to revive these motivations on appeal. RB41.

Accordingly, the Board erred when it combined Julia with Nazarathy and Quigley based solely on what an artisan "could have" done with items that "can be" combined. Appx34-35. This is a legally insufficient ground to combine references. *Personal Web*, 848 F.3d at 993-94; *InTouch*, 751 F.3d at 1352. The Board's ruling should be reversed. *E.g.*, *TQ Delta*, 942 F.3d at 1357; *In re Magnum Oil Tools Int'l*, 829 F.3d 1364, 1375 (Fed. Cir. 2016).

**2. Comcast fails to address Promptu's arguments and authority**

Comcast's brief continues with a purported rebuttal of Promptu's opening arguments, but its contentions largely just rehash those discussed above. RB36-43. The Court may reject them for the same reasons above and in Promptu's opening brief. *See* Sections II.A.1, *supra*.

For example, Comcast justifies the Board's finding that the references "can be" or "could be" combined with two isolated passages where the Board used the word "would" instead. RB36. But these passages are not findings—they just "restat[e] legal tests." BB22. The first passage states that the Board "will explain" its reasoning in another section (Appx31), and the other is a topic sentence asserting a conclusion (Appx33). These are not findings. The only factual ***reason*** the Board gave for its conclusion—that the references "can be" or "could be" combined—is legally unsound. BB21-25. Neither the Board nor Comcast can remedy this methodological problem with by using the word "would" in legal conclusions. *See*

*In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017); *In re Nuvasive*, 842 F.3d 1376, 1382-85 (Fed. Cir. 2016); *In re Lee*, 277 F.3d 1338, 1343-45 (Fed. Cir. 2002).

Comcast then reargues that an artisan would have combined the references because partitioning was "well known." RB37-38. This argument fails again for the reasons discussed above. *See* Section II.A.1.c, *supra*.

Nor can Comcast distinguish Promptu's cases. While Comcast strings Promptu's authority together and quotes their holdings (RB38-39), its only explanation for why they do not apply is to repeat its prior arguments (RB39-41). For example, Comcast urges that Julia itself "suggests the Combination" and even "*requires*" a partitioning reference. BB40-41. Neither contention passes muster. Julia does ***not*** suggest partitioning a back channel into multiple identified speech channels—or any other way of handling multiple requests besides "[q]ueuing" them for processing. Section II.A.1, *supra*. And the Board never found that Julia "*requires*" a partitioning feature (nor did Comcast ever make such an argument). *Id.*; *see also* Appx34-35; Appx2600, 6:12-26. And Comcast's reliance on the "length" of the Board's holding misses the mark. RB39. The Board and Comcast consistently refer to what "can be" or "could be" done throughout their analysis. *See* Appx30; Appx34; Appx572; Appx3193-3195 ¶ 6 (using "can be" six times); BB23.

The Board's language of mere possibility is particularly salient here because it rejected every proposal Comcast offered that "would have motivated an ordinary

artisan to make the proposed combination." Appx36. None of Comcast's cases share this feature. *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327 (Fed. Cir. 2016) dealt with a semantics concern where the patentee challenged only "the weight the PTAB afforded to the record evidence," not its legal sufficiency. *Id.* at 1333-34. And in *PGS Geophysical AS v. Iancu*, 891 F.3d 1354 (Fed. Cir. 2018), the Board did not reject a challenger's proposed motivations as it did here. *Id.* at 1365; Appx36. After dismissing Comcast's arguments at trial, the only remaining motivation available to the Board was what "could be" or "can be" done based on what was "known." Appx34-35. This is no motivation at all. *See* Section II.A.1, *supra*.

Comcast concludes by claiming this case is about weighing expert testimony. RB42. It is not. It is about a failure of proof. The obviousness question was never "whether Comcast's expert contradicted the record," it was "whether the record provides a 'motivation to pick out [Julia, Nazarathy, and Quigley] and combine them to arrive at the claimed solution.'" BB26-27 (quoting *Personal Web*, 848 F.3d at 993-94). The record lacks this motivation, and the Board cannot generate one by calling an expert's hindsight-driven combination "logical." BB25-28.

* * * * *

Comcast does not dispute that its obviousness case fails without a motivation to combine Julia with Nazarathy or Quigley. *See* BB24. Because the Board erred by combining these references, a *prima facie* case of obviousness has not been

established. This Court may thus reverse without reaching the issue of secondary considerations. *See TQ Delta*, 942 F.3d at 1359-61 (reversing the Board when it erred in its motivation to combine analysis); *InTouch*, 751 F.3d at 1353-54.

### B. The Board improperly disregarded Promptu's secondary consideration evidence

As an independent basis for reversal, Promptu also established a nexus between AgileTV and the claimed invention via presumption and direct evidence. *See* BB28-48. Comcast's response largely ignores these arguments. Instead, it treats secondary considerations as a magic word test, ignores Promptu's caselaw, and admits the Board erred but frames it as harmless. RB43-62. None of these reasons warrants affirmance. For this additional reason, the Court should reverse.

#### 1. The Board erred in rejecting Promptu's evidence for a presumed nexus

Promptu's opening brief explained why the Board should have presumed a nexus between AgileTV and the claimed invention. *See* BB11-13, BB28-36. This presumption arises when a patentee ties objective evidence to a product embodying an invention "disclosed and claimed in the patent." *Chemours*, 4 F.4th at 1378 (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)); *WBIP*, 829 F.3d at 1329. Here, Promptu supplied evidence from various sources explaining how AgileTV practiced the invention disclosed and claimed. *See* BB11-13, BB28-36. This evidence took the form of declarations (Appx5222-5236;

Appx5418-5422), product documentation (Appx4810-4870; Appx4903-4949; Appx4950-4955; Appx5126-5189), market research (Appx4959-4964), the specification (Appx5228 ¶ 16; Appx140, 12:45-56), and others (*e.g.*, BB11).

**a. Promptu's secondary consideration evidence bears directly on claim 1 of the '196 patent**

Comcast's primary response on appeal complains that Promptu never tied this evidence to a particular claim of the '196 patent. *See* RB45-46, RB54-56. The record belies this assertion. Promptu's factual witness, Dr. Chaiken, testified how AgileTV practiced the invention disclosed and claimed in the '196 patent. *See* Appx 5227-5228 ¶¶ 14-15. His testimony tracks the elements of claim 1 to a T:

| **'196 Patent, Claim 1 (Appx159-160, 50:62-51:10)** | **Chaiken Declaration (Appx 5227-5228 ¶ 15)** |
|---|---|
| A method . . . comprising the steps of: | |
| receiving [a] back channel to create a received back channel;[1] | By 2003, the Agile TV system architecture partitioned a received back channel to a multiplicity of received identified speech channels . . . .<br><br>The user voice commands were multiplexed on a back channel received by the AgileTV voice processing system . . . . |
| partitioning said received back channel into a multiplicity of received identified speech channels; | partitioned a received back channel to a multiplicity of received identified speech channels, |

[1] This Court previously construed "received back channel" to include the "back channel," and thus evidence of the former applies to the latter. *See Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*, 838 F. App'x 551, 554 (Fed. Cir. 2021).

| **’196 Patent, Claim 1 (Appx159-160, 50:62-51:10)** | **Chaiken Declaration (Appx 5227-5228 ¶ 15)** |
|---|---|
| processing said multiplicity of said received identified speech channels to create a multiplicity of identified speech content; and | processed those [multiplicity of received identified speech channels] to create a multiplicity of identified speech content, and |
| responding to said identified speech content to create an identified speech content response that is unique, for each of said multiplicity of identified speech contents. | responded to the multiplicity of identified speech content to create a unique identified speech content response for each identified speech content. |

While Promptu did not specifically call out claim 1 in its briefing, there was no genuine question about which claim the evidence addressed. The Board repeatedly referred to claim 1 in its analysis on this issue, and it wrongly criticized Dr. Chaiken’s testimony for tracking the claim *too closely*. *See* Appx40. Comcast makes the same charge on appeal. RB54-55. This dispels any alleged confusion. Comcast (and the Board) cannot disparage evidence for “parroting” a claim while expressing uncertainty as to which claim the evidence refers. *Id.* Comcast’s demand for magic words—as well as the Board’s—do not control the analysis. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1230 (Fed. Cir. 2019) (reviewing “the substance” of an issue rather than the presence of “magic words”).

Nor is Comcast (or the Board) correct to state that Promptu never relied on this portion of Dr. Chaiken’s testimony. *See* RB54-55; Appx40. Promptu cited this paragraph both in its arguments for a presumed nexus (Appx792 (citing Appx5225-

5228 ¶¶ 8-16)) and for direct evidence (Appx794-795 (citing Appx5227-5228 ¶ 15)). Comcast cannot ignore the evidence Promptu expressly cited.

#### b. Comcast cannot justify the Board's summary disregard of Dr. Chaiken's testimony

Comcast next tries to justify the Board's avoidance of the evidence by improperly branding Dr. Chaiken's testimony as "conclusory." BB56; Appx40. This assertion is unsound. BB33-36. Dr. Chaiken described the functions of AgileTV and provided examples. Appx5227-5228 ¶¶ 14-16. His experience arises from his personal involvement with AgileTV's creation, development, and implementation, as well as his role as Promptu's former CTO. *See* Appx5224 ¶ 5; Appx5227-5228 ¶¶ 14-16; Appx5233 ¶ 29; Appx5234-5235 ¶¶ 31-32. Dr. Chaiken installed AgileTV in multiple locations within Comcast's offices and network, as documented in emails, photographs, and videos. *See, e.g.*, Appx4967-4968; Appx5116. Not a single Comcast witness disputed these facts.

Nor did Comcast meaningfully challenge this evidence at trial. Appx880-881. It asked Dr. Chaiken no questions about AgileTV's partitioning or back channel functionality at his deposition, did not contest his credibility, and devoted little attention to the issue in its Reply. *Id.*; *see also* BB34-36. While Comcast touts its trial briefing as decisive (RB46-47), it merely labeled Dr. Chaiken's testimony as "conclusory" and stated—in a footnote—that it did not bear on the claims. Appx880-881 & n.4. For the reasons explained above, neither assertion is correct. *See supra*.

Comcast's caselaw further supports Promptu. Comcast agrees that the Board had no basis to treat Dr. Chaiken as an expert lacking foundation (RB56) but tries to remedy this error by relying on the ***dissent*** in *In re Soni*, 54 F.3d 746, 753 (Fed. Cir. 1995) (Michel, J., dissenting).[2] Comcast never signals its reliance on a dissent, and a cursory review of *Soni* reveals why. There, this Court ***reversed*** the Board when it labeled objective evidence "conclusory" and failed to consider it. *Soni*, 54 F.3d at 750-51. The Board committed the same error here. Appx40; *see also* BB33-36.

Comcast further omits how *Soni*'s dissent would apply only "when the Patent Office questions the efficacy of those statements." *Soni*, 54 F.3d at 753 (Michel, J., dissenting). Here, the Board did not contest Dr. Chaiken's credibility or the foundation for his knowledge.[3] Appx40-41. Neither did Comcast. *See supra*. This leaves Dr. Chaiken's testimony unrebutted.

The Board thus had the "responsibility to ensure that unrebutted, legally significant evidence is not arbitrarily ignored." *Zavaleta-Policiano v. Sessions*, 873 F.3d 241, 248 (4th Cir. 2017). The Board cannot ignore "reliable, unrebutted evidence" on how a product works. *Holmwood v. Sugavanam*, 948 F.2d 1236, 1240

---

[2] Comcast alleges that the Board did not confuse Dr. Chaiken as an expert and merely cited the wrong rule. RB56. Comcast is wrong. In a separate portion of the opinion, the Board stated that Dr. Chaiken discussed information that "is not the type of information an expert witness would normally rely upon." Appx84.

[3] The Board did question whether AgileTV "partition[ed] a received back channel" (Appx40), but Dr. Chaiken's unrebutted testimony described how AgileTV "partitioned a received back channel" (Appx5227-5228 ¶ 15).

(Fed. Cir. 1991); *see also Quanergy Sys. v. Velodyn Lidar USA*, 24 F.4th 1406, 1418 (Fed. Cir. 2022) (presuming a nexus on unrebutted testimony). If Comcast wanted to challenge this evidence, it needed to "present evidence" and not rely on attorney "argument alone." *WBIP*, 829 F.3d at 1329. It did not do so.

Finally, Comcast admits the Board erred by raising alleged "important, unclaimed features" in AgileTV for the first time in its decision. RB56. Comcast nevertheless tries to minimize this error as "unnecessary to [the Board's] core holding" (*id.*), but no fair reading of the Board's decision supports that claim. The Board relied on these "unclaimed features" to find AgileTV not "coextensive with claim 1." Appx41. The Board devoted over a page of discussion to this point, relying on its own independent "review of the evidence." Appx41-42. Comcast itself points to this finding as a reason for affirmance. RB56-57. This was no passing aside.

But as Promptu explained, this ruling was procedurally and substantively improper. BB30-32. The Board cannot raise and decide unbriefed theories on its own accord. *Magnum Oil*, 829 F.3d at 1375; *In re IPR Licensing, Inc.*, 942 F.3d 1363, 1369 (Fed. Cir. 2019). Nor do the presence of unclaimed features automatically defeat a nexus. *See, e.g.*, *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1377-78 (Fed. Cir. 2000); *Quanergy*, 24 F.4th at 1417-18. Comcast rebuts neither argument. RB56-57.

Thus, while Comcast emphasizes that AgileTV "changed over time" (RB56-57), it never argues that these changes were anything other than "additional insignificant features." *Quanergy*, 24 F.4th at 1418. Nor could it. AgileTV used the same "architecture . . . ***throughout AgileTV's existence***." Appx5226 ¶ 10 (emphasis added). This architecture remained the same throughout Dr. Chaiken's time at Promptu, including its installation within Comcast's cable network. Appx5228 ¶ 16. Under these circumstances, "presuming a nexus is still appropriate." *Quanergy*, 24 F.4th at 1418.

For this reason alone, the Board's decision should be reversed.

### 2. The Board erred in rejecting Promptu's direct evidence of a nexus

Promptu's opening brief also explained how Promptu supplied direct evidence of a nexus between AgileTV and the claimed invention. *See, e.g.*, BB28-29, BB36-48. This evidence consisted of industry praise (BB4-6, BB12-13, BB29, BB45-46), satisfying a long-felt need (BB12-13, 29, 44), commercial success (BB12-13, BB29, BB45), and licensing achievements (BB5, BB12-13, BB28-29, BB45-48). Comcast's response fails to confront this evidence. Instead, Comcast ignores Promptu's caselaw, draws illusory distinctions, and disregards the record. For this independent reason, the Board's decision should be reversed.

**a. Long-felt need**

Promptu's evidence established a long-felt need for delivering speech recognition capabilities across cable and video networks in a way that solved upstream bandwidth limitations. *See, e.g.*, Appx4991; Appx4957; Appx135-136, 2:60-3:20, 3:33-41; Appx142, 15:1-15. The claims do so by processing speech channels partitioned from multiple user sites and responding to speech content with unique commands. Appx159-160, claim 1. No system had ever done this before, and the unique combination of elements provided a solution to this problem. This evidence establishes a nexus. *See, e.g.*, *Chemours*, 4 F.4th at 1378 ("[A] nexus [may] exist where the claimed invention is a unique combination of known elements from the prior art."); *WBIP*, 829 F.3d at 1330-32. Comcast presents two arguments in response, but neither withstands scrutiny.

**i. Comcast improperly oversimplifies the claims**

***First***, Comcast improperly attacks Promptu's evidence by distilling the claims down to their "general concept." RB47-48, BB60-61; Appx43-44. Like the Board, Comcast alleges that the claims merely cover "voice recognition in cable systems" and cite Julia as disclosing this idea.[4] RB47-48; Appx43-45. But this Court has

[4] The Board elsewhere construed the claims to ***exclude*** speech recognition ***and*** cable systems. Appx43-46. The Board's inconsistent view of the claims underscores the arbitrary and capricious nature of its reasoning. *See Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1321 (Fed. Cir. 2017).

cautioned against oversimplifying claims in patentability analyses. *See, e.g.*, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). Patent challengers thus cannot demand objective indicia hinge on a specific feature. *See Chemours*, 4 F.4th at 1378; *WBIP*, 829 F.3d at 1330-31; *Rambus Inc. v. Rea*, 731 F.3d 1248, 1257-58 (Fed. Cir. 2013). And here, the claims recite more than just "voice recognition in cable systems." They also require (among other things) "partitioning" speech channels to resolve upstream bandwidth issues. Appx159-160, claim 1.

Julia does not disclose this feature. Julia even acknowledges the bandwidth problem and proposes solving it a different way. *See* Appx2600, 5:39-46 (proposing local processing, rather than network processing as claimed). Praise for AgileTV touted its ability to address this latency issue. *See, e.g.*, Appx4991 (praising AgileTV for processing commands "far more quickly" and describing how "the latency on the Promptu service was noticabl[y] lower than on the [conventional] service."). The Board erred by isolating "individual limitations" that do not fully describe the claimed invention and ignoring its "unique combination" of elements. *Chemours*, 4 F.4th at 1378; *see also WBIP*, 829 F.3d at 1330-32; Appx44-45 & n.14; BB42-45.

Comcast responds by drawing legal distinctions that do not exist. RB60-61. According to Comcast, cases like *Chemours* and *WBIP* do not apply here because the claimed concept exists in "*a single prior art reference*." *Id.* This assertion is both factually and legally incorrect. It is factually incorrect because this is not a single-

reference obviousness case. Comcast relies on ***Nazarathy and Quigley***—not Julia—for allegedly teaching the claimed partitioning step. *E.g.*, Appx556-558. And Comcast is legally incorrect because nothing in *Chemours* or *WBIP* exclude their holdings from single-reference obviousness cases. As *WBIP* makes plain, secondary considerations "must be considered in ***every*** case." *WBIP*, 829 F.3d at 1328 (citing *Transocean Offshore Deepwater Drilling USA, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012)); *see also Chemours*, 4 F.4th at 1377 ("must be considered"). The evidence must be considered here.

#### ii. Comcast advances an inaccurate claim construction that the Board raised for the first time in its decision

***Second***, Comcast endorses the Board's erroneous construction excluding cable networks from the claims. RB58-60 (construing "at least one of cable television delivery and video delivery" disjunctively). Comcast admits the Board raised this construction for the first time without warning in its final decision (RB58) but submits the construction is correct (RB58-60). Once again, Comcast's arguments fail on procedure and substance.

Procedurally, the Board cannot raise critical claim constructions for the first time in a decision when that term had not been at issue before. *SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1351 (Fed. Cir. 2016), *rev'd on other grounds*, *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018). While Comcast urges that the Board was "free to do [so]" because it did not "chang[e] theories midstream"

(RB60 n.10), this is not the test. *See Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1263 (Fed. Cir. 2021) (finding lack of notice even though "the Board did not change theories midstream"). Here, there was never an original "theory" because neither the Board nor Comcast had ever suggested that the claims excluded cable implementations. *See* BB39-40. Promptu thus had no occasion to suspect the construction of this term was at issue. *See SAS*, 825 F.3d at 1351.

Nor is the Board's construction substantively correct. The phrase "at least one of" connotes a conjunctive list when it joins elements by the word *and*. *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870 (Fed. Cir. 2004); BB37-40. Comcast argues *SuperGuide* does not apply when items in a list "hav[e] only one value," but it cites only noncontrolling district court and PTAB cases for this idea. RB59. *SuperGuide* controls. *See SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech.*, 983 F.3d 1367, 1376-77 (Fed. Cir. 2021) (reaffirming *SuperGuide*).

In any event, the claimed options here have more than one option. As Promptu explained, there are different types of cable and video delivery. BB38-39 (citing Appx102, Fig. 3 depicting analog cable, digital cable, and various kinds of video content); Appx137, 5:18-22; Appx141, 13:1-8. This makes the listed items categories rather than mutually exclusive options. BB38-39. Comcast has no response to this argument. RB59-60.

Comcast also mentions in a footnote that the latency need was not "long-felt." RB48 n.6. Merits arguments in footnotes are waived. *Ford Motor Co. v. United States*, 926 F.3d 741, 760 n.12 (Fed. Cir. 2019). Comcast is also wrong. By 2000, the cable bandwidth problem remained unresolved. *E.g.*, Appx135-136, 2:60-3:20. Because network bandwidth had not decreased over time, this means that the problem had persisted for as long as cable networks existed.

Finally, Comcast's invocation of the broadest reasonable interpretation has no force. RB58-59. Even under the broadest reasonable interpretation, claims generally receive their plain and ordinary meaning. *See In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF*, 815 F.3d 747, 755 (Fed. Cir. 2016). *SuperGuide* and its progeny reflect nothing more "general grammatical principle[s]." *SIMO*, 983 F.3d at 1377; *SuperGuide*, 358 F.3d at 886. Nothing can be plainer or more ordinary than the rules of grammar.

The Board thus erred in its evaluation of secondary considerations by failing to account for the claimed partitioning step, cable implementation, or latency improvements. Appx43-45; *Chemours*, 4 F.4th at 1378; *WBIP*, 829 F.3d at 1330-32. That error is particularly acute here because the art itself acknowledges the problem the '196 patent solved. *See* Appx2600, 5:39-46. The Board's judgment on this issue should be reversed. *E.g.*, *Chemours*, 4 F.4th at 1379.

**b. Industry praise**

Promptu's evidence at trial similarly established industry praise for AgileTV. *See* BB4-5 (citing Appx4957, Appx4991, Appx4979-4982), BB12-13, BB40-42; Appx795-801. Some of this praise came from Comcast itself. For example, its executives declared how they "could fall in love with [AgileTV]."[5] Appx5229 ¶ 19. Such unbiased recognition by an accused infringer is always relevant to the obviousness inquiry. *See, e.g.*, *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379-80 (Fed. Cir. 2012) (quoting *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1999)).

On appeal, Comcast objects that this praise was due solely to "off-the-shelf" speech recognition technology. RB49-50. But Promptu never purported to invent speech recognition—it solved technological barriers to implementing server-side speech processing in a content delivery network. *See, e.g.*, BB27. The praise for AgileTV reflects this innovation. *See* Section II.B.2.a, *supra*. Buckingham Research, for example, lauded AgileTV's speed and reduced latency over legacy systems. *See* Appx4991. AgileTV won an award for its ability to scale to thousands of customers. Appx4957. The art acknowledged these bandwidth issues (Appx2600, 5:39-46) and

[5] While the Board excluded an email referenced in this paragraph as hearsay, Comcast never sought to exclude this portion of Dr. Chaiken's testimony, which is based on his firsthand recollection of admissions by Comcast employees.

the ’196 patent solved them (*see* Appx1378, 5:26-31; Appx135-136, 2:60-3:3; Appx142, 15:1-5). Comcast never contests these improvements. RB49-50.

Comcast’s arguments also conflict with the Board’s judgment. The Board did not discount Promptu’s praise evidence because the claims recite allegedly ***generic*** “voice recognition technology.” RB49-50. The Board rejected this evidence because it found that speech technology “is not recited in the challenged claims” ***at all***. Appx45-46. The Board minted this claim construction for the first time in its final written decision despite no party raising the issue at trial. BB40-42.

Comcast’s response neither defends the Board’s construction nor endorses its procedure. RB49-50. Comcast’s claim construction section says nothing about speech recognition (RB57-60), and its praise objections turn on the purported *novelty* of speech recognition—not its absence in the claims (RB49-50 & n.7). It is thus undisputed that the Board erred by construing the claims, erred in that construction, and erred in its summary dismissal of Promptu’s praise evidence. BB40-42.

Nor does Comcast have any answer to the Board’s inconsistent treatment of Promptu’s evidence across different cases. *See* BB44-45. In another proceeding, the Board discounted similar evidence because the claims there did not recite “multiple users.” *Comcast Cable Commc’ns, LLC v. Promptu Sys. Corp.*, IPR2018-00343, Paper 56, at 49-50 (P.T.A.B. July 18, 2019). The claims on appeal expressly recite a “multiplicity of user sites.” Appx159-160, 50:62-51:4. This Board should have

considered the evidence. But rather than do so, the Board stated that the evidence here pertained to unclaimed "voice recognition technology"—an element expressly recited in the other case. *See Comcast*, Paper 56, at 7. Besides being incorrect (*see supra*; BB40-42), the Board's inconsistent conclusions on similar evidence reflect arbitrary and capricious reasoning this Court has rejected. *Vicor*, 869 F.3d at 1321.

Comcast responds only by stating that the evidence in *Comcast* was "weak." RB61-62. This is no response at all. The reason ***why*** the Board found the evidence weak was because it allegedly spoke to an element not recited in those claims. *Comcast*, Paper 56, at 49-50. That element is present here. Appx159-160, 50:62-51:4. The Board (and Comcast) cannot have it both ways. *Vicor*, 869 F.3d at 1321.

**c. Commercial success and Comcast's license**

Promptu also adduced evidence at trial of AgileTV's commercial success, raising over $35 million in funding. *See* BB12-13 (citing, e.g., Appx5232 ¶ 26; Appx4843; Appx4806; Appx5003-5005). This success included Comcast taking a license to the '196 patent. *Id.* (citing, e.g., Appx5233-5235 ¶¶ 27-32; Appx5006-5193); *see also* BB5 (citing, e.g., Appx5083); BB45-48.

Comcast does not dispute this success. RB50-51. Instead, Comcast asserts that AgileTV's success arose from features present in the prior art. *Id.* For the reasons explained above, however, the art did not disclose the unique combination of features present and praised in AgileTV. *See* Sections II.B.2.a-b, *supra*.

Indeed, Comcast's past actions belie its assertions today. Of all the technologies Comcast could have licensed, it chose AgileTV and the '196 patent. Appx5233-5235 ¶¶ 27-32; Appx5006-5193. Comcast does not identify any alleged "prior art" that it licensed for a similar purpose. RB50-51. Indeed, Comcast praised Promptu in a contemporaneous presentation as the "[o]nly vendor that focused on VR [voice recognition] over [the] cable plant" and having "more knowledge than anyone else." Appx5220. It is thus not credible for Comcast to claim that its license to AgileTV and the '196 patent were due to conventional features it could have found anywhere else. *Id.*

Comcast has little to say about its license to the '196 patent. RB51-52. Comcast opens by claiming the Board held that the license was "provided for no consideration." RB52 (citing Appx47). But the Board found no such "fact[]"—it was merely summarizing Comcast's *argument*. Appx47 (discussing what Comcast "argu[ed]"). Nor do the facts support Comcast's claim. Comcast licensed AgileTV and the '196 patent for ***millions of dollars***.[6] Appx3417, 156:1-9; Appx953. As a party challenging the patent, Comcast's "recognition of the importance of [this] advance is relevant to a determination of obviousness." *Mintz*, 679 F.3d at 1379.

---

[6] Promptu later gave the money back to Comcast to prove (to investors and Comcast) that it could survive without Comcast's funding. Appx3418-3419, 160:20-161:25.

Comcast next disparages the license for having the purpose of "evaluat[ing] the AgileTV system for possible deployment." RB52. This concession does not support Comcast. The '196 patent reflects one of the patents protecting AgileTV. Appx5083. Comcast knew the '196 patent (including claim 1) was one of the few Promptu patents to have allowable claims at the time of the license. *See* Appx5083; Appx2313-2318; BB46-47. That Comcast found it necessary to license the '196 patent to deploy AgileTV makes the license ***more*** relevant, not less. *See* BB47.

At most, Comcast tries to downplay the license because it included rights to other patents. RB61. Quoting *In re Cree*, 818 F.3d 694 (Fed. Cir. 2016), Comcast urges that the presence of these other patents casts "doubt" over whether the license was based on the merits of the '196 patent. RB61. But *Cree* is inapposite. There, this Court declined to find a nexus because "the specific licenses [were] not in the record" and the only information about them were "press releases" vaguely describing "licensing transactions." *Cree*, 818 F.3d at 703. Here, the specific license is of record (Appx5006-5111), and it expressly includes the '196 patent (Appx5083 (App. No. 09/785,375)). The Court here thus need not guess as to whether the '196 patent bears on the license at issue. Comcast's response has no legal support and departs from the practical realities of modern patent licensing.[7]

---

[7] Tellingly, Comcast does not try to defend the Board's reliance on *Shoes by Firebug*. *See* BB47-48 (distinguishing *Shoes by Firebug LLC v. Stride Ride Children's Grp.*, 962 F.3d 1362, 1372 (Fed. Cir. 2020)); Appx47-48.

Accordingly, substantial evidence does not support the Board's assessment of Promptu's direct evidence of secondary considerations. For this additional reason, this Court should reverse the Board's judgment. *Chemours*, 4 F.4th at 1379.

* * * * *

The Board failed to consider compelling, objective evidence of nonobviousness in this case. It erred by failing to presume a nexus between AgileTV and the claimed invention, and it erred again in its analysis of Promptu's direct nexus evidence. Either ground provides an independent reason for reversal. *See Chemours*, 4 F.4th at 1379 (reversing the Board when substantial evidence did not support its secondary considerations analysis). At a minimum, the Court should vacate the Board's judgment so that the Board can consider the evidence. *See Rambus*, 731 F.3d at 1258.

### C. Comcast's request for remand based on Murdock is forfeited and improper

In a footnote, Comcast asks for remand on the issue of whether Murdock is prior art. RB8 n.1. It does so by referencing arguments made in another appeal. *Id.* The Court should decline this suggestion. Merits arguments raised only in footnotes are forfeited. *Ford*, 926 F.3d at 760 n.12. Incorporating arguments by reference also violates federal rules. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335 (Fed. Cir. 2006). And here, Comcast's incorporation would exceed this Court's allowable word count by over 1,300 words. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899,

910 (Fed. Cir. 2014) ("It would be fundamentally unfair to allow a party to use incorporation to exceed word count."). Comcast forfeited this argument.

## III. CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the Board finding claims 1, 2, 4-6, 12, and 13 of the '196 patent unpatentable. Alternatively, the Court should vacate and remand the Board's judgment for further proceedings.

August 1, 2022

Respectfully submitted,

*/s/ Jacob A. Schroeder*

Jacob A. Schroeder
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

Joshua L. Goldberg
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Joseph M. Schaffner
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street
Reston, VA 20190
(571) 203-2700

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-voume limitations of Federal Rule of Appellate Procedure 32 and Federal Circuit Rule 32

This brief contains 6,545 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font, Times New Roman.

/s/ *Jacob A. Schroeder*
Jacob A. Schroeder
Counsel for Promptu Systems Corp.